The STATE of Ohio, Appellee,

v.

GILBERT, Appellant.

[Cite as *State v. Gilbert*, 184 Ohio App.3d 642, 2009-Ohio-5528.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 08–CA–82.

Decided Oct. 16, 2009.

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Amy Smith, Assistant Prosecuting Attorney, for appellee.

Anderson Law, L.L.C., and Bradley D. Anderson, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Larry Calvin Gilbert, appeals from his conviction and sentence on one count of possession of cocaine in violation of R.C. 2925.11(A). After pleading no contest to the charge, Gilbert was sentenced to eight months in prison.

{¶ 2} Gilbert contends that the trial court committed reversible error in denying his motion to suppress the drug evidence and statements obtained as the result of his illegal detention and search.

{¶ 3} We conclude that the trial court erred in denying the motion to suppress. Under *Arizona v. Gant* (2009), 556 U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485, the police were not justified in conducting a warrantless search of the automobile in which Gilbert was a passenger. Since the search was illegal, any evidence discovered thereafter as a result of the search, including drug evidence and Gilbert's statements, should have been suppressed as the "fruit of the poisonous tree."

{¶ 4} Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 5} In August 2007, Larry Gilbert was a passenger in a Chevy Malibu that was stopped for a traffic violation. Officer Anderson, who stopped the vehicle,

ran the driving status of the driver and found that her license had been suspended. She was arrested and removed from the vehicle. Anderson also checked the status of the other occupants of the vehicle and discovered that the front passenger, a female, had an outstanding warrant for robbery. This individual was also removed from the vehicle and was placed under arrest.

{¶ 6} The other passengers in the vehicle, Gilbert and a Mr. Ogle, did not have any outstanding warrants. Gilbert was seated on the rear driver's side of the vehicle, and Ogle was seated on the rear passenger's side. Gilbert and Ogle were removed from the vehicle so that the officers could conduct a search incident to arrest inside the car without having to worry about their safety. A pat-down was done for safety purposes, but nothing was found on either of the individuals. Although the two men were not arrested or handcuffed, they were not free to leave. An officer was stationed to watch them while other officers conducted a search of the vehicle.

{¶ 7} During the search, officers found what were suspected to be marijuana seeds in the console located between the front passenger and driver's seat. Based on that discovery, Officer Fredendall of the K–9 unit and his partner Rambo, a drug-sniffing dog, conducted a drug-detection search. Fredendall and Rambo walked around the vehicle, and Rambo alerted at the passenger side door of the vehicle. Fredendall could not recall whether the vehicle had two or four doors, but he and Rambo entered on the front passenger's side of the vehicle. Fredendall indicated that it is customary to enter through the passenger side door.

{¶ 8} Once in the vehicle, Rambo alerted to the front center console by scratching, which is what the dog does when he picks up a scent that he believes is drugs. Fredendall indicated that Rambo then turned his attention to the back seat of the car. He did not alert, but just had a "change of interest," which means that the dog stops, is smelling in certain spots, and will take more deep breaths. Fredendall testified that this behavior signifies that the dog has found a lingering odor. Rambo did not scratch anything else in the car.

{¶ 9} After Rambo was taken out of the car, officers searched the car, but did not find anything illegal, other than the marijuana seeds that were in the front console. Officer Fredendall then searched Gilbert thoroughly, from head to toe, for illegal substances. He did not find any drugs on Gilbert's person. Fredendall then asked Gilbert to remove his shoes, at which time Gilbert attempted to flee. Several officers chased Gilbert and caught him, after which he was charged with obstructing official business. Gilbert told the officers that he ran because he had drugs in his shoe. A subsequent search disclosed two bags in Gilbert's left shoe. The object in one bag tested positive for marijuana, and the other tested

positive for crack cocaine. Gilbert was then arrested and indicted for possession of cocaine.

{¶ 10} Gilbert filed a motion to suppress prior to trial, arguing that the drugs and his statement should be suppressed, because they were the products of an illegal search. The trial court held a suppression hearing in January 2008 and heard testimony from Officers Fredendall and Williams. Following the hearing, the trial court overruled the suppression motion in a two-line decision that did not contain any factual findings. The court simply stated that the motion was not well taken. Gilbert then pleaded no contest to the cocaine charge, was adjudicated guilty, and was sentenced to eight months in prison.

{¶ 11} Gilbert appeals from his conviction and sentence.

## II

{¶ 12} Gilbert's sole assignment of error is as follows:

{¶ 13} "The trial court committed reversible error in denying appellant's motion to suppress evidence and statements obtained as the result of his illegal detention and search."

{¶ 14} Under this assignment of error, Gilbert contends that he was illegally detained after a traffic stop of a vehicle in which he was a passenger and that he was illegally searched for drugs without a warrant, without probable cause, and not incident to a lawful arrest. In his initial brief, Gilbert focuses on the lack of articulable evidence justifying his detention. Gilbert also points out that the discovery of drugs in a vehicle or even upon the person of another occupant of a vehicle is insufficient to create probable cause to believe that drugs will be found on a passenger. Finally, Gilbert contends that even if the minuscule amount of marijuana would have justified officers in arresting the occupants, it would not have justified a search, since possession of marijuana is a minor misdemeanor, for which officers could only issue a citation.

{¶ 15} In responding to Gilbert's brief, the state raises the issue of whether the officers' initial search of the vehicle is impermissible under *Gant*, 556 U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485. Despite raising the issue, the state contends that we should not consider it, because Gilbert failed to raise the legitimacy of the initial search at the trial level or on appeal.

{¶ 16} Gilbert responds to the state's argument by pointing out that he could not have raised an issue based upon *Gant*, because it had not yet been decided at the time of trial, nor had it been decided by February 23, 2009, when he filed his appellate brief. Gilbert further notes that he did, in fact, raise the lack of articulable facts to support his arrest and the warrantless search of his person. According to Gilbert, *Gant* merely provides additional support for that position.

{¶ 17} *Gant* was decided in April 2009 and was not available at the time the suppression motion was filed, nor had it been decided when Gilbert filed his appellate brief. *Gant* has also been described as "a surprising departure from long-established precedent." *State v. Thomas,* Cuyahoga App. No. 91891, 2009-Ohio-3461, 2009 WL 2054145, at ¶ 17. The trial court cannot be faulted for having failed to anticipate *Gant.*

{¶ 18} Furthermore, the United States Supreme Court has held that new rules for the conduct of criminal prosecutions must be "applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649. Accord *State v. Thompson,* 161 Ohio App.3d 334, 2005-Ohio-2508, 830 N.E.2d 394, ¶ 21–25 (applying new criminal law retroactively to case pending on direct appeal). Our review of *Gant* indicates that it does formulate a new rule in the area of Fourth Amendment searches. We are, therefore, required to consider the application of *Gant* to the case before us.

{¶ 19} Before doing so, we briefly mention the standards for reviewing decisions on motions to suppress, which are well established. In *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, the Supreme Court of Ohio stated:

{¶ 20} "The burden of initially establishing whether a search or seizure was authorized by a warrant is on the party challenging the legality of the search or seizure. * * * Once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search. * * * This flows from the presumption that searches conducted outside the judicial process, without prior approval by judge or magistrate, are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" Id. at 218, 524 N.E.2d 889, quoting *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564.

{¶ 21} Furthermore, in ruling on a motion to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. Thus, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.

{¶ 22} There are no findings of fact to accept as true in the case before us, because the trial court failed to make any factual findings. Nonetheless, the

evidence at the suppression hearing was largely undisputed. The evidence indicates that the initial search of the automobile, which uncovered marijuana seeds, was a routine search that was conducted incident to the arrest of the driver and the occupant of the front seat of the car.

{¶ 23} The United States Supreme Court indicated in *Gant* that in every case addressing the reasonableness of a warrantless search, the analysis should begin with the following basic rule:

{¶ 24} " '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' * * * Among the exceptions to the warrant requirement is a search incident to a lawful arrest. * * * The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at ——, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485, quoting *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.

{¶ 25} *Gant* involved a motorist who was handcuffed and placed in the back of a patrol car after being arrested for driving on a suspended license. Id. at ——, 129 S.Ct. at 1715, 173 L.Ed.2d 485. The police officers then conducted a search of the automobile. One officer found a gun, and another found a bag of cocaine in the pocket of a jacket in the back seat of the car. Id. The United States Supreme Court granted certiorari to consider the following Arizona Supreme Court's ruling:

{¶ 26} "[T]he search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, as defined in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and applied to vehicle searches in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), did not justify the search in this case." *Gant*, 556 U.S. at ——, 129 S.Ct. 1710, 1714, 173 L.Ed.2d 485.

{¶ 27} A majority of the United States Supreme Court agreed with the Arizona Supreme Court and held that:

{¶ 28} "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle. Consistent with the holding in *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), and following the suggestion in Justice SCALIA's opinion concurring in the judgment in that case, id., at 632, 124 S.Ct. 2127, 158 L.Ed.2d 905, we also conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to

believe that evidence of the offense of arrest might be found in the vehicle." *Gant,* 556 U.S. at ——, 129 S.Ct. 1710, 1714, 173 L.Ed.2d 485.

{¶ 29} The United States Supreme Court noted that its opinion in *Belton* had been "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." Id. at ——, 129 S.Ct. at 1719, 173 L.Ed.2d 485. The court rejected this broad reading of *Belton,* because:

{¶ 30} "[A] vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.' * * * Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant,* 556 U.S. at ——, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485, quoting *Belton,* 453 U.S. at 460, 101 S.Ct. 2860, 69 L.Ed.2d 768, fn. 3.

{¶ 31} The United States Supreme Court went on to add:

{¶ 32} "[A]lthough it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' *Thornton,* 541 U.S. at 632, 124 S.Ct. 2127[, 158 L.Ed.2d 905] (SCALIA, J., concurring in judgment). In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. * * * But in others, including *Belton* and *Thornton,* the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant,* 556 U.S. at ——, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485.

■ {¶ 33} In the case before us, the search is not justified under either branch of the standard established in *Gant.* When the search occurred, multiple police officers were at the scene, and all occupants of the car had been removed and were under police control. Thus, at the time of the search, no occupant had access to, or was within reaching distance of, the vehicle's passenger compartment. There is also no indication that the search was initiated to discover evidence relevant either to the crime that had been committed by the driver or

the crime for which there was an outstanding warrant to arrest the front-seat passenger. The driver of the car had been arrested for driving under suspension, and the car would have contained no evidence relevant to that crime. A passenger in the front seat had also been arrested on an outstanding warrant for robbery, but there is no indication that the officers were searching for evidence relevant to that crime or that evidence was likely to be present relevant to that crime, which would have occurred sometime in the past, since a warrant had been issued. Rather than resulting from a quest for relevant evidence of the crime that caused the stop, the search was the type of search incident to an arrest that officers have routinely conducted under the authority of *Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768. As the United States Supreme Court stressed in *Gant*:

{¶ 34} "It is particularly significant that *Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Gant*, 556 U.S. at ——, 129 S.Ct. 1710, 1720, 173 L.Ed.2d 485.

{¶ 35} Accordingly, under the new standard established in *Gant*, the police were not justified in conducting a warrantless search of the automobile in which Gilbert was a passenger. Since the search was illegal, any evidence discovered thereafter as a result of the search, including the cocaine and marijuana, and Gilbert's statements, should have been suppressed as the " 'fruit of the poisonous tree.' " *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441.

{¶ 36} The state contends that minimal testimony was offered regarding the search because it was not raised as an issue. The state also argues that there were other persons in close proximity to the vehicle who could have gained access. In addition, the state contends that the officers might have been justified in searching the vehicle, if two conjectural facts might have occurred: (1) the police were going to turn the vehicle over to Gilbert or the other passenger and (2) the police had a concern for their safety.

{¶ 37} We disagree with the state's reasoning. As an initial point, there is adequate testimony in the record to assess the initial search. The testimony of Officer Williams clearly indicates that the search was conducted incident to the arrest, not because the officers suspected criminal activity. The officers did not

discover the presence of the marijuana seeds in the console until they searched the car, so there was no basis under an "automobile exception" for searching the automobile. Compare *State v. Canter*, Franklin App. No. 09AP–47, 2009-Ohio-4837, 2009 WL 2941524 (recognizing that a search incident to the arrest of the driver for driving without a valid license would not be permissible under *Gant*). Id. at ¶ 6.

{¶ 38} In *Canter*, the driver of a vehicle was arrested for not having a valid license. The defendant was an occupant of the vehicle, and he was ordered out of the car by the police. The defendant carried a small backpack, which the police ordered him to return to the vehicle. When the backpack was searched, it was found to contain a small amount of marijuana and a digital scale. Id. at ¶ 3.

{¶ 39} The Tenth District concluded that the search of the backpack was per se unreasonable under *Gant* unless another well-defined exception to the warrant requirement applied. Id. at ¶ 6. Relying on the "automobile exception," the Tenth District held that the officers had probable cause for a warrantless search, because they smelled the odor of marijuana smoke coming from the vehicle. Id. at ¶ 7. The Tenth District further concluded that the officers acted reasonably in directing the defendant to put his backpack in the vehicle, because it was large enough to contain a weapon. Id. at ¶ 8. The court noted that the officers also could also have asked to see the hard object in the backpack after doing a pat-down. Id.

{¶ 40} In contrast, there was no evidence of illegal conduct in the case before us until the officers illegally searched the car. The officers did not testify that they had smelled marijuana or had any other probable cause for a warrantless search. Furthermore, Gilbert and Ogle had no opportunity to gain access to the car, because they were being guarded by a police officer. The remaining theories of the state are also conjecture, at best.

{¶ 41} Of course, the state had the burden of proving the lawfulness of the search of the car, since it was a warrantless search. The state might have approached the suppression hearing with different evidence had it anticipated the holding in *Gant*, 556 U.S. at ——, 129 S.Ct. 1710, 173 L.Ed.2d 485, but that is a consequence of any new, unanticipated decision of the Supreme Court of the United States (or of Ohio, for that matter), that applies retroactively to cases in which final judgment has not yet been rendered.

{¶ 42} Based on the conclusion that the search of the car was illegal and that all evidence thereafter obtained must be excluded as tainted by the illegal search, we need not address Gilbert's arguments about the illegality of his detention or

about the fact that the minuscule amount of marijuana would have warranted only a misdemeanor citation, not an arrest.

{¶ 43} Gilbert's sole assignment of error is sustained.

IV

{¶ 44} Gilbert's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and BROGAN, J., concur.