[Cite as *State v. Grubb*, 186 Ohio App.3d 744, 2010-Ohio-1265.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

The STATE OF OHIO,

    APPELLEE,                              CASE NO. 4-09-32

    v.

GRUBB,                                   O P I N I O N

    APPELLANT.

Appeal from Defiance Municipal Court
Trial Court No. CRB 0900239

Judgment Reversed and Cause Remanded

Date of Decision: March 29, 2010

APPEARANCES:

    David A. Land, for appellee.

    James E. Hitchcock, for appellant.

**ROGERS, Judge.**

{¶1} Defendant-appellant, Rachel Grubb, appeals the judgment of the Defiance Municipal Court overruling her motion to suppress drug paraphernalia obtained during a search related to a traffic stop. On appeal, Grubb contends that the trial court erred in overruling her motion to suppress because the search was unconstitutional pursuant to *Arizona v. Gant* (2009), 556 U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485. Based upon the following, we reverse the judgment of the trial court.

{¶2} In February 2009, Grubb was charged via complaint with one count of possession of drug paraphernalia in violation of R.C. 2925.14, a misdemeanor of the fourth degree. The charge stemmed from an incident during which a police officer pulled over a vehicle driven by Michael Grubb, Grubb's husband, in which Grubb was riding, arrested Michael for driving with a suspended license, proceeded to search Grubb's purse inside the vehicle, discovered several glass pipes inside the purse containing burnt residue and the odor of marijuana, and discovered a small amount of marijuana inside the passenger compartment of the vehicle.[1] Thereafter, Grubb entered a plea of not guilty to the complaint.

{¶3} In March 2009, Grubb filed a motion to suppress the evidence seized as a result of the traffic stop, arguing that the search was unconstitutional because

---

[1] The record also reflects that Michael Grubb was charged with driving under suspension and marijuana possession.

the arresting officer's statement was devoid of any suspicion that Grubb was armed and dangerous or presented any threat that would justify a search of the vehicle or her purse.

{¶4} In April 2009, the trial court held a hearing on the motion to suppress,[2] at which the following testimony was heard.

{¶5} Deputy Benjamin Moser of the Defiance County Sheriff's Office testified that on February 17, 2009, he was patrolling on State Route 2, south of State Route 249, in Defiance County, when he observed a westbound vehicle traveling in excess of the posted speed limit; that he conducted a registration check on the vehicle and discovered that the registered owner's license was suspended; that he initiated a stop of the vehicle based on the speeding violation and identified the registered owner, Michael, as the vehicle's operator based upon images from his in-car computer; that Michael's wife, later identified as Grubb, was seated in the passenger seat of the vehicle; that he asked Michael to exit the vehicle, informed him that his license was under suspension, handcuffed him, placed him under arrest, and seated him in the back of his patrol car; and that he believed he asked Michael whether there was anything illegal in the vehicle, and he believed Michael indicated that there was not.

---

[2] The suppression hearing was a joint hearing concerning both Grubb's and Michael's cases, and the trial court granted only Michael's motion to suppress the evidence of marijuana discovered in the vehicle.

{¶6} Deputy Moser continued that he checked his in-car computer and discovered that Grubb did not have a driver's license; that he approached the vehicle, asked Grubb to exit the passenger seat and stand toward the front of the vehicle, and Grubb complied; that he observed a purse on the floorboard of the vehicle, opened it, and discovered several broken smoking pipes and one intact pipe; that there was residue on the pipes that smelled like marijuana; that Grubb stated that the pipes did not belong to her, but that the purse belonged to her; that he placed Grubb in handcuffs and proceeded to search the passenger compartment of the vehicle; that he discovered a small amount of marijuana under the passenger seat; that both Michael and Grubb denied ownership of the marijuana and pipes; and that Grubb was outside the vehicle at the time he searched her purse, and he had arrested her at the time he searched the remainder of the passenger compartment of the vehicle.

{¶7} On cross-examination, Deputy Moser testified that the area in which he initiated the stop of the Grubbs' vehicle was rural, but that he could not say whether it was a high-crime area; that when he initiated the stop, he did not observe that the Grubbs appeared "to be hiding anything, or moving stuff around in the car"; that Michael did not resist the pat-down of his person or his arrest and did not mention anything about a weapon; that he did not find any weapons on Michael's person; that it took approximately 15 minutes for him to remove

Michael from the vehicle, arrest him, and move him into the patrol car; that during the approximate 15-minute period during which he arrested and secured Michael, Grubb was sitting in the passenger seat of the vehicle and he did not see her making any furtive movements; that Grubb questioned why he had asked her to exit the vehicle, but had no "major attitude"; that Grubb made no unusual movements or threatening comments; that he did not believe that Grubb was going to shoot or hurt him; that he did not know whether he had any specific reason to suspect that she was armed, but that "when [he walks] up to a car [he suspects] that, you know, anybody could be armed with anything"; that he searched the car because he "was doing a search incident to arrest. [He] was looking for anything, you know, weapons, anything illegal, anything that shouldn't be in the car"; that at the time he searched the vehicle, he had already placed Michael under arrest, and it would have been impossible for Michael to reach into the vehicle; and that he decided to "cut them a break" and not impound the vehicle.

{¶8} In July 2009, the trial court overruled Grubb's motion to suppress, finding that when Deputy Moser removed Grubb from the vehicle, she was not under arrest, and he proceeded to search the area where she had been seated for officer-safety purposes; that upon checking her immediate vicinity in the vehicle, Deputy Moser discovered her purse, which contained smoking pipes with marijuana residue; that the basic holding of *Gant*, 556 U.S. ___, 129 S.Ct.1710,

173 L.Ed.2d 485, was that "[p]olice may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search, or that the vehicle contains evidence of the offense of arrest"; that the facts at issue were distinguished from *Gant* because Michael was not the sole occupant of the vehicle and Grubb, not being under arrest initially, would have had access to her area in the vehicle; that for officer-safety purposes, Deputy Moser was permitted to search her area with the probability of then returning her to the vehicle to wait for a ride; and that upon discovering the drug paraphernalia in her purse, Deputy Moser acquired probable cause to place Grubb under arrest and had reason to search the vehicle to look for further evidence of *her* crime, possession of drug paraphernalia.

{¶9}   In August 2009, Grubb withdrew her plea of not guilty and entered a plea of no contest to "drug offenses," for which the trial court determined she was guilty and sentenced her to a 30-day jail term, suspended in its entirety conditioned on no similar violations, and imposed a six-month driver's-license suspension and a $250 fine. Thereafter, Grubb appealed her conviction and sentence.

{¶10} In September 2009, this court dismissed Grubb's appeal, finding that the trial court's judgment entry of conviction was not a final, appealable order because its statement that Grubb entered a plea of no contest to "drug offenses"

did not sufficiently state to what offense her plea and conviction related pursuant to Crim.R. 32(C); *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330. Shortly thereafter, the trial court issued a second judgment entry to reflect that Grubb was convicted of possession of drug paraphernalia in violation of R.C. 2925.14.

**{¶11}** It is from this judgment that Grubb appeals, presenting the following assignment of error for our review.

> The trial court erred when it overruled the defendant's motion to suppress certain materials found in her husband's car and in her purse. The search clearly violated *Arizona v. Gant*, [___ U.S. ___,] 129 S.Ct. 1710, 173 L.Ed.2d 48509.

*Standard of Review*

**{¶12}** "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." *State v. Dudli*, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶12, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶100, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20. The appellate

court must then review the application of the law to the facts de novo. *Roberts*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8.

*Search and Seizure*

{¶13} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of those violations, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *Mapp v. Ohio* (1961), 367 U.S. 643, 649; *Weeks v. United States* (1914), 232 U.S. 383, 394. The primary purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police from unlawful conduct. *State v. Jones* (2000), 88 Ohio St.3d 430, 434, overruled by *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931.

{¶14} The United States Supreme Court has repeatedly emphasized the general rule that " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Gant*, 556 U.S. ___, 129 S.Ct. at 1716, 173 L.Ed.2d 485, quoting

*Katz v. United States* (1967), 389 U.S. 347, 357. In order for a law-enforcement officer to conduct a search of an automobile without first obtaining a warrant, the officer must typically possess probable cause, which means that " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Carlson* (1995), 102 Ohio App.3d 585, 600, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 214. However, even when probable cause is not present, many exceptions have been established for warrantless searches conducted under certain circumstances. See, e.g., exigent-circumstances exception, *United States v. Edwards* (1974), 415 U.S. 800; search-incident-to-arrest exception, *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; *New York v. Belton* (1981), 453 U.S. 454; automobile exception, *United States v. Ross* (1982), 456 U.S. 798; *State v. Mesa* (1999), 87 Ohio St.3d 105; inventory-search exception, *Colorado v. Bertine* (1987), 479 U.S. 367, 372; plain-view exception, *Harris v. United States* (1968), 390 U.S. 234; "plain feel" exception, *State v. Evans* (1993), 67 Ohio St.3d 405, 408; consensual-search exception, *Florida v. Bostick* (1991), 501 U.S. 429; "stop and frisk" exception, *Terry v. Ohio* (1968), 392 U.S. 1.

{¶15} At a suppression hearing, the state bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, paragraph two

of the syllabus; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297, citing 5 LaFave, Search and Seizure (3d Ed.1996), Section 11.2(b).

*Automobile Searches Incident to Arrest*

{¶16} Even when probable cause to search an automobile is lacking, it has long been established that "[w]hen a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," including any containers therein. *State v. Murrell* (2002), 94 Ohio St.3d 489, 764 N.E.2d 986, at syllabus, following *New York v. Belton* (1981), 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768. See also *Gant*, 556 U.S. ___, 129 S.Ct. at 1717, 173 L.Ed.2d 485. In *Belton*, a single law-enforcement officer conducted a traffic stop of four men in a vehicle traveling in excess of the speed limit. The officer then discovered that none of the men owned the vehicle, smelled the odor of burnt marijuana, and observed an envelope on the vehicle floor marked "supergold," a term associated with marijuana. *Belton* at 455-456. The officer discovered that the envelope contained marijuana, removed all four men from the vehicle, arrested them for marijuana possession, searched them, and, as the men stood by the side of the car, searched a jacket located in the passenger compartment and discovered

cocaine. Id. at 456. The holding in *Belton* was based in large part on the recognition that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach.' " Id. at 460, quoting *Chimel*, 395 U.S. at 763, 89 S.Ct. 2034, 23 L.Ed.2d 685. See also *Gant* at 1717. Thus, the underlying rationales of the exception were officer safety and preservation of evidence. *Gant* at 1712; *Chimel* at 763.

{¶17} Despite these rationales behind the search-incident-to-arrest exception, many courts have broadly interpreted *Belton* to permit searches of automobiles incident to arrest even when there was no possibility that the arrestee could access her automobile to threaten officer safety or to destroy or conceal evidence, such as when she was already arrested and secured inside the patrol car. *Gant* at 1718; see, e.g., *Murrell*, 94 Ohio St.3d 489, 764 N.E.2d 986; *State v. Gray*, 2d Dist. No. 22688, 2009-Ohio-1411, ¶17 (finding that "an arrestee handcuffed in the backseat of a squad car changes nothing * * *"); *State v. Clancy* (Apr. 19, 2002), 2d Dist. No. 18844, 2002 WL 628124. Compare *Murrell* at 497-498 (Moyer, C.J., dissenting) (observing that "[t]he majority acknowledges that the occupant must first be removed from the automobile and placed under arrest before the police officer may search the automobile. Therefore, since the occupant

is already under arrest and separated from the vehicle, the *Chimel* justifications for the search, *i.e.*, police officer safety and the protection of evidence, disappear").

{¶18} In light of criticism of some courts' broad application of *Belton*, 453 U.S. 454, the United States Supreme Court recently revisited the issue of automobile searches incident to arrest in *Gant*, specifically addressing situations where the search is conducted after the scene is "secured." In *Gant*, 556 U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485, a defendant was arrested for driving with a suspended license. After he was arrested, handcuffed, and placed in the back seat of the locked patrol car, police officers proceeded to search Gant's vehicle and discovered illegal drugs inside a jacket in the passenger compartment. Finding that the goals behind the exception, officer safety and preservation of evidence, were not served where the scene and vehicle's sole occupant were already "secured," the Supreme Court narrowed the breadth of automobile searches incident to arrest, as set forth in *Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, by requiring that the searches be restricted to the reaching distance of the passenger compartment of the vehicle when the individual is unsecured, or where the police have a reasonable belief that evidence of the crime for which the individual was arrested may be found in the vehicle. *Gant* at 1718-1719.

{¶19} Despite its limitation on automobile searches incident to arrest, the Supreme Court emphasized in *Gant* that even if a search incident to arrest was not

justified, the other established exceptions to the warrant requirement may nevertheless apply depending on the circumstances. For example, the court remarked that pursuant to *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, an officer may "search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.' " *Gant*, 556 U.S. ___, 129 S.Ct. at 1721, 173 L.Ed.2d 485, quoting *Long* at 1049.

*Application of Gant*

{¶20} Since its release, a number of Ohio courts have applied *Gant*, including the Second Appellate District in *State v. Gilbert*, 184 Ohio App.3d 642, 2009-Ohio-5528. In *Gilbert*, a police officer stopped a vehicle containing four occupants because the driver had committed a traffic violation. The officer discovered that the driver's license had been suspended, arrested her, and removed her from the vehicle. Thereafter, the officer checked the status of the remaining three occupants, discovered that a female passenger had an outstanding warrant for her arrest, and arrested the female passenger and removed her from the vehicle. The remaining two occupants, including Gilbert, did not have any outstanding warrants; however, the officer removed them from the vehicle for officer-safety purposes so that other officers could search the vehicle incident to arrest. An officer was stationed to monitor the two occupants while the search of the vehicle

was being conducted by several other officers. A pat-down search of the two occupants revealed nothing, and they were neither arrested nor handcuffed. During the search of the vehicle, an officer discovered marijuana seeds in the passenger compartment. Due to discovery of the seeds, an officer proceeded to search Gilbert more thoroughly and uncovered several bags of illegal substances in his shoe.

**{¶21}** Thereafter, the Second District reversed Gilbert's convictions for drug possession, finding that the search was unlawful. The court found that at the time the search occurred, multiple police officers were on the scene, and all vehicle occupants had been removed and were under police control. Thus, the court concluded, none of the occupants had access to the vehicle's passenger compartment. Further, the court observed, there was no indication that the search was conducted to uncover evidence relevant to either of the crimes for which the driver and female passenger were arrested. Based upon these findings, the court concluded that although the search would have been permissible under the traditional interpretation of *Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, it was unlawful under the new limitations in *Gant*, stating as follows:

> It is particularly significant that *Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the

> vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment-the concern about giving police officers unbridled discretion to rummage at will among a person's private effects.

*Gilbert*, 2009-Ohio-5528, at ¶34, quoting *Gant*, 556 U.S. ___, 129 S.Ct. at 1720, 173 L.Ed.2d 485.

{¶22} In *State v. Canter*, 10th Dist. No. 09AP-47, 2009-Ohio-4837, the Tenth Appellate District also considered *Gant*. In *Canter*, a police officer stopped a vehicle containing two occupants for a traffic violation, arrested the driver for driving without a valid license, and secured the driver in the patrol car. Thereafter, the officer ordered the other occupant, Canter, from the vehicle, and, upon his attempting to exit with a small backpack, ordered Canter to return the backpack to the vehicle. The officer then searched the backpack and uncovered drugs and drug paraphernalia. The Tenth District observed that *Gant* did not provide guidance for situations where the driver of the vehicle was arrested and secured, but the vehicle contained other occupants who were not arrested and secured. The court found that since this type of situation did not yet "fit into a well-defined, clearly delineated exception, *Katz* tells us that the search was per se unreasonable until another well-defined, well-delineated exception can be found." *Canter*, 2009-Ohio-4837, at ¶6, citing *Katz*, 389 U.S. 347. Nevertheless, in this specific situation, the court concluded that the search did fit into another exception—the

automobile exception—because the officers conducting the stop smelled the odor of marijuana emanating from the vehicle, and that due to the odor, the officers had probable cause to search for evidence of drug abuse. *Canter*, 2009-Ohio-4837, at ¶7-8. We also note that prior to conducting the search, the police had already determined that they were going to impound the vehicle. *Canter*, 2009-Ohio-4837, at ¶3.

*Assignment of Error*

**{¶23}** In her sole assignment of error, Grubb contends that the trial court erred in overruling her motion to suppress evidence based on the alleged unconstitutionality of the search pursuant to *Gant*, 556 U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485. Specifically, Grubb argues that the search of her purse and the passenger compartment of the vehicle was not justified by either the interests of officer safety or preservation of evidence. We agree.

**{¶24}** The state argues that the case sub judice is distinguishable from *Gilbert*, because multiple police officers were present at the stop in *Gilbert*, as opposed to the sole police officer present during the stop of the Grubbs; because receiving backup assistance would have been difficult given the rural area; because Grubb was close enough to Deputy Moser to pose a threat to him; because she had not been restrained and was not being watched by a separate law-enforcement officer, allowing her access to the vehicle; and because this situation was more

analogous to *Belton* than *Gant* because *Belton* involved one officer and four unsecured arrestees under suspicion of a drug offense, whereas *Gant* involved several officers and one secured arrestee with a license-suspension offense.

{¶25} This situation is similar to *Gant* in that Michael's arrest was for a license-suspension offense, and not for a drug offense; thus, the rationale that drug offenders are often armed was inapplicable as a justification for this search. Additionally, although the Grubbs' vehicle contained two occupants, more than the single occupant in *Gant*, this was also far fewer than the four unsecured arrestees involved in *Belton*.

{¶26} Here, Deputy Moser candidly testified that he could not say whether the rural area where he stopped the Grubbs was a high-crime area; that he did not observe the Grubbs making any furtive movements when he initiated the stop; that he found no indication that Michael had a weapon after conducting a pat-down; that at the time he searched Grubb's purse, Michael was arrested, handcuffed, and locked in the patrol car; and that at that point, it would not have been possible for Michael to reach for a weapon in the vehicle. Deputy Moser offered no testimony that he believed that evidence of Michael's offense of driving under suspension could be found in the vehicle, nor is any such evidence apparent from the record. Thus, under the rule of *Gant*, 556 U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485, we

cannot find that the search was lawful pursuant to the search-incident-to-arrest exception to the general-warrant requirement.

**{¶27}** As the search-incident-to-arrest exception is inapplicable here, we must move on to determine whether another exception to the warrant requirement was present and justified the search of Grubb's purse and the passenger compartment. Deputy Moser testified that during the approximate 15-minute period during which he arrested and secured Michael, he did not see Grubb making any furtive movements; that Grubb questioned why he asked her to exit the vehicle, but had no "major attitude"; that Grubb made no unusual movements or threatening comments; that he did not believe that Grubb was going to shoot or hurt him; that he did not know whether he had any specific reason to suspect that she was armed, but that "when [he walks] up to a car [he suspects] that, you know, anybody could be armed with anything"; and that he searched the car because he "was doing a search incident to arrest. [He] was looking for anything, you know, weapons, anything illegal, anything that shouldn't be in the car." We cannot find, based on this testimony, that Deputy Moser possessed reasonable suspicion that Grubb was "dangerous" and might access the vehicle to retrieve a weapon. See *Gant*, 556 U.S. ___, 129 S.Ct. at 1721, 173 L.Ed.2d 485; *Long*, 463 U.S. at 1049, 103 S.Ct. 3469. Compare *Arizona v. Johnson* (2009), 129 S.Ct. 781 (finding that an officer's pat-down of a vehicle's passenger did not violate Fourth Amendment

constraints where the traffic stop was executed in a neighborhood associated with gang activity; where the officer testified that the defendant's behavior and clothing, namely a bandana in a local gang color and possession of a police scanner, caused her to question his gang affiliation; where the officer learned upon questioning the defendant that he had served time in prison and was from a town associated with gang activity; and where the officer testified that all of the foregoing factors caused her to suspect that the defendant possessed a weapon). Finally, as Deputy Moser testified that he had decided not to impound the vehicle, we cannot find that the search would have been justified under the inventory exception to the warrant requirement. The state has not argued that any other exception to the warrant requirement was applicable in this situation, nor is any apparent from the record. Thus, we find that the search of Grubb's purse and subsequent search of the passenger compartment was unreasonable and that the trial court erred in overruling her motion to suppress.

{¶28} Accordingly, we sustain Grubb's assignment of error.

{¶29} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded

PRESTON, J., concurs.

SHAW, J., concurs in judgment only.

_____

**SHAW, J., concurring in judgment only.**

{¶30} I do not concur in the portions of the majority opinion applying by analogy the Second District Court of Appeals decision in *Gilbert* to the present case. On the contrary, I believe that the number of police officers involved in the original stop and arrest is a crucial factor in these cases. In this case, we have a single police officer with two individuals in a stopped vehicle in a remote location at 2:00 a.m. The driver of the stopped vehicle has been removed from the vehicle, arrested, and placed in the cruiser. The female passenger remains alone and unchecked in the stopped vehicle for several minutes while the officer processes the driver.

{¶31} The driver has informed the police officer that the female passenger does not have a driver's license. As a result, the officer had to necessarily make a decision about whether to impound the vehicle and/or transport the passenger somewhere, or leave both car and passenger by the side of the road at the remote location at 2:00 a.m. Having secured the driver, the officer surely had the right to approach the passenger to verify her identity, her license status, and her ability to obtain separate transportation apart from the stopped vehicle or the police cruiser.

**{¶32}** It is significant to me that the officer at this point would not know what the passenger's reaction would be to the fact that the defendant has been arrested and that she will not be permitted to drive the car anywhere else. If the officer intended to transport the passenger in his cruiser, the cases cited by the majority would clearly support the officer's right to search her purse first. However, even under the limited testimony presented in this case, it is my view that a prudent police officer would be justified in checking the passenger's purse for his own safety when approaching the passenger in order to make any of the foregoing decisions. And in any event, in deciding whether to impound the vehicle or merely secure it to be left on the side of the road, some examination of the vehicle could be in order for the same reason.

**{¶33}** The only reason that I concur in the judgment reached in this case, despite the foregoing reservations, is that in this rather unique instance, none of these circumstances are testified to or otherwise explained in the record. On the contrary, the officer in this case specifically testified that he was not concerned for his safety at any time, that he had decided not to impound the vehicle, and we do not know from the record whether the passenger was transported by the police officer or left with the car at the scene of the stop - or whether the officer even contemplated making any of these decisions in conjunction with his search of the purse.

**{¶34}** For these reasons, I concur in the judgment reached in this particular case.

_____