[Cite as *State v. Morlock*, 2013-Ohio-641.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 1-12-21

    v.

RANDALL E. MORLOCK,              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR20120065

Judgment Affirmed

Date of Decision: February 25, 2013

APPEARANCES:

    *Jason N. Flower* for Appellant

    *Jana E. Emerick* for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Randall E. Morlock ("Morlock"), appeals the judgment of the Allen County Court of Common Pleas finding him guilty of possession of crack cocaine, after his motion to suppress was denied and he entered a plea of no contest. On appeal, Morlock contends that the trial court erred when it denied his motion to suppress because he claims that the search of his vehicle was an illegal, warrantless search and because the search was not a valid *Terry* search. For the reasons set forth below, the judgment is affirmed.

{¶2} On November 30, 2011, at approximately 1:15 a.m., Officer Mark Link of the Lima Police Department was on patrol when he observed Morlock park his vehicle and go up to the front porch of a duplex, which was a suspected drug house. (04/06/12 Hearing Tr. 7) Officer Link called dispatch to check on the license plates and also called Officer Jesse Harrod to respond. Officer Link was subsequently informed that the license plates on the vehicle were not valid and they needed to be confiscated. (Tr. 9) Morlock left the duplex within 2-3 minutes, and Officer Link followed him and initiated a traffic stop because of the invalid license plates. During the traffic stop, a small quantity of crack cocaine was found in the vehicle and Morlock was then taken into custody. (Tr. 17)

{¶3} On February 16, 2012, the Allen County Grand Jury returned a single count indictment charging Morlock with possession of cocaine, a felony of the

fifth degree in violation of R.C. 2925.1(A)&(C)(4)(a). Morlock entered a plea of not guilty. Morlock filed a motion to suppress, claiming that the warrantless search of the vehicle violated his right to be free from unlawful searches and seizures.

{¶4} On April 4, 2012, a hearing was held on Morlock's motion to suppress. The trial court heard the testimony of the two officers who were involved in the traffic stop. Officer Link testified that he had nearly 20 years of law enforcement experience. He had called dispatch to check on Morlock's plates because it was late at night in a high crime area where there had been problems with prostitution, drugs, robberies, numerous assaults, and even shootings. (Tr. 18) The police had received reports of drug activity at the building where Morlock parked and approached the front stairs. (Tr. 7) Just after Officer Link learned that the license plates needed to be confiscated, he observed Morlock returning to his truck and beginning to drive away. In Officer Link's experience, this type of short-term, in-and-out traffic was indicative of the drug trade. (Tr. 18-19)

{¶5} Link hurried to catch up with Morlock and activated his overhead lights in order to make a traffic stop. Officer Link testified that Morlock did not initially stop, but rather, drove further down the block and then pulled over to the curb. (Tr. 11) Link pulled in behind the pick-up truck, which was lit with both the

cruiser's 360 lights and a spotlight that Link put on. At that time, Link observed Morlock hold his arm out, then lean forward and down to the right while still seated inside the pick-up truck. (Tr. 11-12) Based upon this type of "furtive" movement, Link became concerned that Morlock was trying to hide either some type of weapon or contraband. (Tr. 12)

{¶6} Officer Link approached the pickup truck on the driver's side while Officer Harrod, who had just arrived as backup, approached the truck on the passenger side. (Tr. 12-13) Because of Link's concern that Morlock may have hidden a weapon, Link instructed Morlock to exit the vehicle and to stand with Officer Harrod on the passenger side of the vehicle in the tree-lawn area. (Tr. 13-14) Morlock complied.

{¶7} Officer Link walked up to the pickup truck where Morlock had left the driver's door open. Because of Officer Link's belief that Morlock had been hiding a weapon or contraband, and because the vehicle was ultimately going to be impounded and searched pursuant to the impound, Link looked inside the truck to see what Morlock may have hidden. (Tr. 15, 19, 47) The only item on the floor of the truck, just beneath the edge of the seat area, was a wadded up tissue. (Tr. 15-17) Link retrieved the tissue and found crack cocaine inside. (Tr. 17) Link then advised Officer Harrod to place Morlock under arrest.

{¶8} On April 25, 2012, the trial court overruled Morlock's motion to suppress. Thereafter, a plea agreement was reached, and Morlock withdrew his plea of not guilty and entered a plea of no contest. On May 1, 2012, the trial court found Morlock guilty and sentenced him to 46 days in jail, with credit for time served of 46 days.

{¶9} It is from this judgment that Morlock now appeals, raising the following two assignments of error for our review.

### First Assignment of Error

**The trial court erred in overruling [Morlock's] motion to suppress because Morlock was in custody, and the search of the vehicle was outside the scope of the detention as he did not have access to the vehicle at the time of the search.**

### Second Assignment of Error

**The trial court erred in overruling [Morlock's] motion to suppress because the stop conducted by Patrolman Link was not a valid *Terry* stop.**

{¶10} Both of Morlock's assignments of error assert that the trial court erred when it failed to grant his motion to suppress the evidence of the cocaine that was discovered during the traffic stop. Morlock does not dispute that the officers had probable cause to make the traffic stop but he contends that there was no basis for the warrantless search of the vehicle. Because both of the assignments of error are related and involve Fourth Amendment exceptions pertaining to warrantless searches, we shall discuss them together.

{¶11} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures and require the suppression of any evidence seized as a result of an unreasonable search and seizure. *Mapp v. Ohio*, 367 U.S. 643 (1961). The United States Supreme Court has repeatedly emphasized the general rule that warrantless searches, conducted outside the judicial process, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *Arizona v. Gant*, 556 U.S. 332 (2009), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Grubb*, 186 Ohio App.3d 744, 2010-Ohio-1265, ¶ 14 (3d Dist.).

{¶12} At a suppression hearing, the state bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement and that it meets Fourth Amendment standards of reasonableness. *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph two of the syllabus; *State v. Penn*, 61 Ohio St.3d 720, 723 (1991); *Grubb*, *supra.* The Supreme Court of Ohio has established the standard of review for a motion to suppress evidence:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent,

> credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. * * *

(Citations omitted)  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8; *accord*, *State v. Wilson*, 3d Dist. No. 5-07-47, 2008-Ohio-2742, ¶ 15.

**{¶13}** Morlock claims the search was unauthorized, relying upon the United States Supreme Court's opinion in *Arizona v. Gant*, *supra*, for the proposition that police may search a vehicle incident to an occupant's arrest only if the arrestee is within reaching distance of the passenger compartments at the time of the search, or if it is reasonable to believe that the vehicle contains evidence of the offense for which the defendant was arrested.  *See Gant*, U.S. 556 at 343.  Morlock maintains that officer safety was not at issue because he was outside the vehicle, next to Officer Harrod, and in police custody.  Morlock contends that he did not have access to the interior of his vehicle at the time of the search, so there was no justification to conduct the warrantless search as a search incident to arrest.  And, it was not reasonable to believe that the interior of the vehicle contained any evidence of the offense for which he was stopped, because the invalid plates were evident from the outside of the vehicle, and had already been confirmed by police dispatch.  Therefore, he claims that it was not reasonable for the officer to "believe the vehicle contain[ed] evidence of the offense of arrest."  *See Gant.*

**{¶14}** We find that Morlock's arguments fail for several reasons. First, this was not a "search incident to an arrest," which was the issue considered by the Supreme Court in *Gant.* Morlock was not under arrest, and it was not likely that he would have been arrested for the invalid plates, as the vehicle did not belong to him. It is conceivable that, if the officer had not found the cocaine, Morlock might have been allowed to return to the vehicle to gather personal belongings from the vehicle before it was impounded. Therefore, it is reasonable that the officers would want to verify that Morlock was not hiding a weapon when Officer Link observed him making a "furtive movement" after Morlock's vehicle was stopped.

**{¶15}** Officer Link described Morlock's actions that he observed right after he stopped his vehicle, stating that, "I saw him lean over and forward with his right hand. * * * I noticed that his arm is straight, so he leans like this (indicating), and then he leans back over to the left and then starts rolling down the window." (Tr. 11-12)

Q. And what did you interpret that [movement] to be?

A. I interpreted that he might be trying to hide either some type of weapon or contraband.

(Tr. 12)

**{¶16}** Because of this concern, Officer Link asked Morlock to step out of the vehicle and to stand with Officer Harrod.

Q. And why did you do that?

A.   Because I don't know if he's trying to hide – I don't know if he's got a weapon up there trying to hide.  And if I see somebody do what I consider or construe a furtive movement, for my safety, for the other officer's safety, I don't go any farther up on a vehicle than that.

(Tr. 13-14)   Officer Link did not do an exhaustive search of the vehicle, but merely looked inside in the area where he saw Morlock reaching, and immediately noticed the tissue.  (Tr. 15-16)

{¶17} It was only after Officer Link opened the tissue and found what appeared to be rocks of crack cocaine that he instructed Officer Harrod to take Morlock into custody.

Q.   Prior to that, was [Morlock] under arrest?

A.   No, he was not.

Q.   He was just being detained so you could do your protective sweep?

A.   Correct.

(Tr. 17)

{¶18} The evidence clearly demonstrates that concern for the officers' safety was a primary motivation behind Officer Link's examination of the vehicle. Because of Morlock's suspicious movements, Officer Link believed that Morlock "was attempting to hide either a weapon or contraband."  (Tr. 50)

{¶19} Defense counsel argues that Officer Link's claimed observation of a "furtive movement" was just a pretext, and that it is not uncommon for anyone to make those types of movements upon being stopped by a police officer, when they reach over to turn off the vehicle, or to retrieve a registration or driver's license. However, Officer Link testified that he was certain that Morlock's actions were definitely suspect. He testified,

> I have twenty years experience. I've done a lot of traffic stops in my time. I've seen a lot of furtive movements. I've seen natural movements. I've seen people get in, get out of their vehicles; how they act; how they interact. I know how I interact when I turn my vehicle on or when I lean over to put something down.

{¶20} The holding in *Gant* was intended to limit the overly broad reading of *New York v. Belton*, 453 U.S. 454 (1981) that the Supreme Court feared had expanded to the point of "giving police officers unbridled discretion to rummage at will among a person's private effects."[1] *Gant* at 345. The Supreme Court did not intend to eliminate existing legitimate reasons for conducting a warrantless search. In fact, *Gant* specifically affirmed the Fourth Amendment exceptions that "ensure that officers may search a vehicle when genuine safety or evidentiary

---

[1] The Supreme Court stated that "[i]t is particularly significant that *Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Gant* at 345.

concerns encountered during the arrest of a vehicle's recent occupant justify a search." *Id.* at 347.

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, *Michigan v. Long*, 463 U.S. 1032, * * * (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." * * * If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. * * * *Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader. Finally, there may be still other circumstances in which safety or evidentiary interests would justify a search. * * *

*Gant* at 346-347.

{¶21} In addition to continuing to allow for searches when safety is a concern, *Gant* continues to allow for evidence relevant to offenses other than the offense of the arrest under appropriate circumstances. *See id.*; *see Ross*, *supra*; *see, also, State v. Kessler*, 53 Ohio St.2d 204 (1978). In this case, Officer Link was concerned that Morlock may have hidden a weapon or contraband. Morlock was observed in an area with a high crime rate, late at night, and had just made a very brief stop at a location that was suspected to be a place where drugs were sold. Officer Link had considerable evidence before him that would cause him to reasonably believe that Morlock may have been attempting to hide drugs when he made his furtive movement.

{¶22} Morlock also submits that the stop conducted by Officer Link was not a valid "*Terry* stop." An investigative stop, or "*Terry* stop," is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1 (1968). It is well-recognized that officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable and articulable suspicion of criminal activity. *Id*.; *see, also, State v. Bobo*, 37 Ohio St.3d 177 (1988). Here, the initial stop was not an investigative stop pursuant to *Terry*, but was made because of the invalid license plates. However, even under *Terry*, the scope of the officer's limited search was not unreasonable based upon the officer's safety concerns and reasonable articulable suspicion that Morlock may have been engaging in criminal activity. *Bobo*, 37 Ohio St.3d at 179; *Terry*, 392 U.S. at 21.

{¶23} If Morlock had not been taken into custody because of the cocaine, there is no assurance that he would not have had access to the interior of the vehicle. Therefore, this situation is distinguishable from *Gant*, wherein the defendant was under arrest and secured in handcuffs inside a patrol car without the possibility of leaving police custody. The search of the vehicle was based upon concern for the officers' safety. In addition, Officer Link also reasonably believed that there could have been contraband hidden under the seat. The search of the vehicle was not a search incident to arrest, therefore, the rule announced in *Gant* is

not applicable. *See, also*, *State v. McClellan*, 3d Dist. 1-09-21, 2010-Ohio-314, ¶ 46. Based on the above, we overrule Morlock's first and second assignments of error.

{¶24} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**