[Cite as *State v. Gibbs*, 2013-Ohio-3820.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                      :      Case No.   13CA4

    vs.                                             :

JANET M. GIBBS,                               :      <u>DECISION AND JUDGMENT ENTRY</u>

    Defendant-Appellant.                  :

_____

<u>APPEARANCES:</u>

COUNSEL FOR APPELLANT:     Stephen K. Sesser, 36 South Paint Street, Chillicothe, Ohio
                                                    45601

COUNSEL FOR APPELLEE:       Paul G. Bertram, III, Marietta City Law Director, and
                                                    Daniel Everson, Marietta City Assistant Law Director, 259
                                                    Butler Street, Suite 200, Marietta, Ohio 45750

_____
CRIMINAL APPEAL FROM MUNICIPAL COURT
DATE JOURNALIZED: 8-27-13
ABELE, J.

{¶ 1}   This is an appeal from a Marietta Municipal Court judgment of conviction and

sentence.   Janet M. Gibbs, defendant below and appellant herein, pled no contest to driving

under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(d).   Appellant assigns the

following error for review:

> "THE TRIAL COURT ERRED WHEN IT DENIED
> DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BECAUSE THE
> STATE HAD THE BURDEN TO PROVE THAT THE LIP RING HAD NO
> EFFECT ON THE BAC DATAMASTER RESULT."

On May 30, 2012, appellant received uniform traffic ticket citations that charged her with

operating a motor vehicle while under the influence of alcohol and driving left of center.   A

BAC Datamaster test later showed appellant's breath contained .162 grams of alcohol per 210

liters of her breath.

**{¶ 2}**   Subsequently, appellant filed a motion to suppress her breath test on grounds that

it was administered in violation of Ohio Adm.Code 3701-53-02.   In particular, appellant

asserted that the applicable regulations required the test be done according to "the operational

checklist for the instrument being used[.]" Id. at (E). The "Checklist" for the BAC Datamaster

required that appellant be observed "for twenty minutes prior to testing to prevent oral intake of

any material." (Emphasis added.)   Appellant argues that because she had an ornamental lip ring

at the time of her breath test, the test was conducted contrary to the checklist and, thus, violated

the Ohio Administrative Code provision.

**{¶ 3}**   The appellee filed a memorandum contra and admitted that appellant wore a lip

ring and asserted that the testing officer asked appellant to remove the ring, and that she tried for

several minutes to do so, but was unsuccessful.   Nevertheless, the appellee concluded that the

breath test violated neither the operational checklist nor the administrative code.

**{¶ 4}**   A very brief "hearing"[1]  was held and the trial court denied the motion to suppress.

 The court held that the state had substantially complied with the administrative regulations and

that appellant had introduced no evidence to show either the ring, or the piercing, would cause

any residual alcohol to remain in her mouth.

**{¶ 5}**   Later, appellant changed her plea to no contest.   The trial court found her guilty,

---

[1]  We use the term "hearing" guardedly in this context because no evidence was introduced, no arguments were heard and what was transacted during that proceeding encompasses barely one page of the transcript.

fined her $750, sentenced to serve sixty days in jail and suspended her license for two years. The appellee later dismissed the driving left of center charge.    This appeal followed.

{¶ 6}    The sole assignment of error asserts that the trial court erred by overruling her motion to suppress.    Appellate review of a decision on a motion to suppress evidence involves mixed questions of law and fact.    *State v. Grubb*, 186 Ohio App.3d 744, 930 N.E.2d 380, 2010-Ohio-1265, at ¶12 (3rd Dist.); *State v. Book*, 165 Ohio App.3d 511, 847 N.E.2d 52, 2006-Ohio-1102, at ¶9 (4th Dist.).    Trial courts will assume the role of the trier of fact and are best situated to resolve factual disputes and to evaluate witness credibility.    *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8.

{¶ 7}    Appellate courts will accept a trial court's factual finding if supported by competent and credible evidence.    *State v. Little*, 183 Ohio App.3d 680, 918 N.E.2d 230, 2009-Ohio-4403,

{¶ 8}    at ¶15 (2nd Dist.); *State v. Metcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist. 1996).    Appellate courts, however, will review de novo a trial court's application of law to those facts. *State v. Higgins*, 183 Ohio App.3d 465, 917 N.E.2d 363, 2009-Ohio- 3979, at ¶14 (5th Dist.); *State v. Poole*, 185 Ohio App.3d 38, 923 N.E.2d 167, 2009-Ohio-5634, at ¶18 (11th Dist.).

{¶ 9}    This issue appears to be a case of first impression in Ohio.    Because Ohio Adm.Code 3701-53-02 requires compliance with the BAC Datamaster "Operational Checklist," and because that checklist requires observing the subject for twenty minutes prior to the test to prevent "oral intake" of any matter, the pivotal question is whether the lip ring amounted to an

"oral intake." We rule in the negative for several reasons.

{¶ 10} The test form does not define "oral intake," nor was the machine's operations manual introduced into evidence, so we do not know how the machine's manufacturer may have interpreted that phrase. The Ninth and Eleventh Districts have defined the term to mean to take something by mouth, *State v. McKelvey*, Ninth Dist. Summit No. 14963, 1991 WL 150986 (Aug. 7, 1991), or "orally ingested in such a manner that it would be digested and pass into the blood stream, or received into the respiratory system[.]" *State v. Birth*, 41 Ohio App.3d 112, 534 N.E.2d 909 (11th Dist. 1997).

{¶ 11} Appellant's lip ring fits neither of those situations. The ring was not inserted into her mouth twenty minutes before the test. Indeed, it had been in her mouth all along, and was not ingested or passed into her respiratory system. The authority on which appellant relies actually bolsters our holding on this point.

{¶ 12} Appellant also cites *State v. McLeod*, 5th Dist. Knox No. 2011–CA –22, 2012-Ohio-1797, wherein the Knox County Court of Appeals reversed a trial court's decision that had overruled a motion to suppress. In *McLeod*, the defendant put a penny in his mouth after he was put in the back of a police cruiser at

{¶ 13} 1:34 AM, spit the penny out when he arrived at the police station and was administered the breath test at 1:51 AM. Id. at ¶¶4-5. The trial court ruled, as a matter of law, that the penny would not have affected the breath test. In reversing, the appellate court held that the state had the burden of proof to show that the penny did not affect the test. Id. at ¶¶7 & 20.

{¶ 14} We believe that *McLeod* is distinguishable on the facts. McLeods's placement of the penny in his mouth, less than twenty minutes before the test, is an "oral intake" of material.

By contrast, in the instant case it appears that the ring had been attached to appellant's lip the whole time. In short, we find no "oral intake" of anything during the requisite twenty minute time period.

**{¶ 15}** Appellant also relies on *State v. Siegel*, 138 Ohio App.3d 562, 741 N.E.2d 938 (3rd Dist. 2000) where the Lake County Court of Appeals reversed a trial court's decision that overruled a motion to suppress. The uncontroverted evidence established that appellant drank water during the twenty minute time period. The trial court held that it was the defendant's burden to show that the water interfered with the test. Id. at 566. On appeal, the Third District held that the burden is on the State to show that the consumption of the water did not affect the test results. Id. at 569-570.

**{¶ 16}** Here again, the facts is the case sub judice differ from *Siegel*. We find no evidence that appellant ingested or swallowed, let alone put into her mouth, any new substance within the twenty minute period before the test. The lip ring had been there all along and was not a new material introduced into her mouth twenty minutes before the breath test.

**{¶ 17}** Although not directly on point, but certainly more comparable, is our ruling in *State v. McVey*, 4th Dist. Athens No. 00CA36, 2000 WL 33226296 (Dec. 28, 2000). In *McVey*, the defendant argued that his breath test results should have been suppressed, in part, because his dentures may have interfered with the result. We rejected his argument holding that the purpose of the twenty minute observation period is to prevent "oral ingestion of any foreign material during that period," and nothing required the removal of foreign material already in the mouth.

**{¶ 18}** Admittedly, *McVey* involved a BAC Verifier rather than a BAC Datamaster (as in this case), but we find no logical reason why the same rule should not apply. Here, the

"Operational Checklist" for the machine speaks to prevention of intake – or a taking in of something by mouth.   No mention is made of removing a substance already in place. Presumably, if this was required to take an accurate test, the manufacturer could have included that feature as in the checklist.

{¶ 19}  We also note that the Indiana Supreme Court heard an analogous case in *Guy v. State*, 823 N.E.2d 274 (Ind. 2005).   Rather than a lip ring, the case involved a pierced tongue. The defendant argued that the presence of her tongue stud violated state administrative regulations that required, she "must not have put any foreign substance in . . . her mouth[.] twenty minutes before the breath test."   Id. at 275.   The trial court held that the tongue stud is not a foreign substance, although the appellate court disagreed and reversed. Id.

{¶ 20}  Although the Indiana Supreme Court did not directly rule on whether the tongue stud is a foreign substance, the court did espound on what it means to "put" something into one's mouth during the wait period:

> "In fact, the science available in the public domain points in the opposite direction. The concern over foreign substances a [sic] person's mouth is the potential for the substances to absorb and retain alcohol in the mouth, which could falsely elevate the breath alcohol concentration. See Patrick M. Harding et al., The Effect of Dentures and Denture Adhesives on Mouth Alcohol Retention, 37 J. Forensic Sci. 999, 999–1000 (1992). A number of studies have shown, though, that a fifteen to twenty-five minute waiting period during which nothing is placed in a person's mouth allows sufficient time for any mouth alcohol to dissipate. See, e.g., Id. at 999; Barry K. Logan & Rodney G. Gullberg, Lack of Effect of Tongue Piercing on an Evidential Breath Alcohol Test, 43 J. Forensic Sci. 239, 239–40 (1998); Ronald L. Moore & J. Guillen, The Effect of Breath Freshener Strips on Two Types of Breath Alcohol Testing Instruments, 49 J. Forensic Sci. 1, 1–3 (2004). These studies support the department of toxicology's decision to require that nothing be "put" in a person's mouth within twenty minutes of a breath test." Id. at 277.

{¶ 21}  Once again, this decision buttresses our conclusion that the "Operational

Checklist" for the BAC Datamaster means oral intake of some new substance (like the *McLeod* penny or the *Siegel* water). It says nothing about the removal of material already present. The Operator's manual may address that issue but, again, it was not introduced into evidence.

{¶ 22} We also point to a final, more practical concern. Appellant voluntarily chose to adorn herself with a lip ring. She is undoubtedly free to do so. When asked to remove it, she informed authorities that it was too difficult. We are not inclined to permit such a voluntary act be used as a shield to avoid breath test participation.

{¶ 23} For these reasons, we conclude that the operator fully complied with the terms of the BAC Datamaster "operational Checklist" and the trial court correctly denied appellant's motion to suppress the test result. Accordingly, we hereby overrule appellant's assignment of error and we hereby affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Gibbs*, 2013-Ohio-3820.]

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.