THE STATE EX REL. SAUNDERS, APPELLANT, *v.* CORNERSTONE FOUNDATION

SYSTEMS, INC. ET AL., APPELLEES.

[Cite as *State ex rel. Saunders v. Cornerstone Found. Sys., Inc.,*

123 Ohio St.3d 40, 2009-Ohio-4083.]

*Workers' compensation — Temporary total disability — Voluntary abandonment*
*of employment by termination for cause — Claimant cannot be considered*
*to have abandoned employment when he had no notice of rule he was*
*violating and that violation could lead to dismissal.*

(No. 2008-1224 — Submitted May 19, 2009 — Decided August 19, 2009.)

APPEAL from the Court of Appeals for Franklin County, No. 07AP-684,

2008-Ohio-2455.

_____

**Per Curiam**.

{¶ 1}  Approximately a month after he injured his knee at work, appellant Harold Saunders was fired by his employer, appellee Cornerstone Foundation Systems, Inc., for allegedly violating a written work rule pertaining to insubordination.  His later request for temporary total disability compensation was denied after appellee Industrial Commission of Ohio concluded that his discharge constituted a voluntary abandonment of his former position of employment. Saunders challenges that decision, particularly the finding that his termination satisfied *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469.  *Louisiana-Pacific* held that a firing could constitute a voluntary abandonment of the claimant's former job if the claimant broke a written work rule that "(1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee."  Id. at 403, 650 N.E.2d 469. The last element is now at issue.

**Cornerstone's Employment Policy**

{¶ 2} There are two relevant versions of Cornerstone's written employment policy – the one in effect when Saunders was hired in January 2004 ("January policy") and the one that took effect in June 2004 ("June policy"). The record before us contains only portions of these policies and lacks both the January "Policy Manual" and the handbook referred to in the "Employee Acknowledgment Form" that Saunders signed when he was hired. Saunders alleges that neither the January manual nor the handbook contained any written work rule discussing insubordination or its penalty, and Cornerstone does not dispute that claim.

{¶ 3} What appears to be the first page of Section 7 of the June policy listed a number of subsections, including "Employee Conduct and Work Rules" and "Progressive Discipline." The "Employee Conduct and Work Rules" subsection listed "examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment." One of these was insubordination, which the policy defined as a "refusal to follow any order given by an employee's supervisor or management, or the refusal or failure to perform work assigned." Cornerstone has characterized the insubordination rule as a "revis[ion to] its employee manual," a characterization that supports Saunders's assertion that no written insubordination rule was contained in the printed materials that he was given the previous January. The penalty for violating the insubordination rule is not known, because the section of the June policy regarding progressive discipline is not in the record.

{¶ 4} Saunders claims that he never received the June 2004 policy and did not know that it existed until after he was fired. This assertion is not contradicted by the record. Three points, moreover, are noteworthy in this regard. First, Cornerstone does not allege that it ever gave Saunders, or any other employee, a copy of the June document, nor does it claim that employees were

2

apprised of its existence by other means, such as the posting of a copy or notice thereof in a conspicuous public place. Second, both the January and June 2004 policies expressly permitted Cornerstone to change employment rules without notice to its employees. Third, when Saunders was given a manual and handbook in January 2004, Cornerstone had Saunders acknowledge its receipt in writing. There is no comparable acknowledgement for the June materials.

### The Injury and Its Aftermath

{¶ 5} Saunders injured his knee at work on April 13, 2005, and returned to work two days later. There is no evidence that Saunders violated any rules of his employment over the next month. On May 13, 2005, however, Saunders refused supervisor Walt Sberna's order to run a bulldozer. Saunders claimed that he refused because of medical restrictions that prohibited his use of foot pedals, but that limitation was not contained in any of the restrictions ordered by his attending physician. Saunders also alleged that he had a written agreement with Sberna that excused him from operating heavy machinery, but that assertion, too, is unsubstantiated by the record.

{¶ 6} Saunders's refusal to operate the bulldozer cost him his job, and he was fired for insubordination. When subsequent knee surgery generated a request for temporary total disability compensation, his request was denied after a commission staff hearing officer ruled that Saunders's refusal to follow orders constituted a voluntary abandonment of his former position of employment within the meaning of *Louisiana-Pacific*, 72 Ohio St.3d 401, 650 N.E.2d 469. Specifically, the staff hearing officer found:

{¶ 7} "The employer presented evidence that [the] injured worker signed for an Employee Handbook on 1/22/2004. Within the Handbook, the employer indicates violation of any of the work rules may lead to termination. One of the work rules is listed as follows: 'Insubordination (refusal to follow any order

given by an employee's supervisor or management, or the refusal or failure to perform work assigned.)'

**{¶ 8}** "* * *

**{¶ 9}** "Therefore, this Staff Hearing Officer finds that the injured worker was terminated for violation of a known, written, work rule, that clearly indicated termination could result."

**{¶ 10}** Further appeal was refused.

**{¶ 11}** Fifteen months later, Saunders asked the commission to reopen the issue of his eligibility for temporary total disability, claiming that Cornerstone had made fraudulent misrepresentations at his earlier hearings. He also submitted what he claimed was newly discovered evidence — an unsworn statement from a former co-worker that claimed that both Saunders and Sberna had told him of a work agreement between them that prohibited Saunders from operating equipment.

**{¶ 12}** Saunders's request was denied. The hearing officer found no evidence of fraud.

**{¶ 13}** Saunders filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in (1) finding that his termination constituted voluntary abandonment under *Louisiana-Pacific* and (2) denying temporary total disability compensation. Finding no abuse of discretion, the court of appeals denied the writ, prompting this appeal as of right.

**{¶ 14}** An employee's voluntary abandonment of his or her former position of employment can bar temporary total disability compensation. *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202. Employment discharge can qualify as a voluntary abandonment because an individual "may be presumed to tacitly accept the consequences of his voluntary acts." *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42,

44, 517 N.E.2d 533. For this principle to apply, however, it must be shown that the employee knew, or should have known, (1) that the conduct that prompted the termination was proscribed and (2) what consequences would follow. *Louisiana-Pacific*, 72 Ohio St.3d at 403, 650 N.E.2d 469; *State ex rel. Liposchak v. Indus. Comm.* (1995), 73 Ohio St.3d 194, 196, 652 N.E.2d 753.

**{¶ 15}** The commission found that Saunders's signature on the January 2004 Employee Acknowledgement Form was evidence that he knew, or should have known, that insubordination was (1) a violation of work rules and (2) a dischargeable offense. This finding, however, is based on the commission's mistaken belief that the insubordination rule was contained in the January handbook. It was not. It was added to Cornerstone's employment policy in June 2004. Consequently, Saunders's signature on a January 2004 form is not evidence that he knew, or should have known, of the rule and that what appears to have been a first-time violation was a dischargeable offense.

**{¶ 16}** There is a "great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation." *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 411, 667 N.E.2d 1217. For that reason, *Louisiana-Pacific* demands a clear, written articulation of workplace rules and the penalties for their violation. In this case, the only employment manual/handbook that Saunders apparently ever received did not include a rule addressing insubordination and its consequences. He could not, therefore, have known that he was violating any rule or that the violation would lead to dismissal. The criteria of *Louisiana-Pacific* were not met, and the commission abused its discretion in finding that Saunders's discharge was a voluntary abandonment of his former position of employment.

**{¶ 17}** The judgment of the court of appeals is hereby reversed.

Judgment reversed
and writ allowed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., and Theodore A. Bowman, for appellant.

Robison, Curphey & O'Connell, Carl E. Habekost, and Jason M. Van Dam, for appellee Cornerstone Foundation Systems, Inc.

Richard Cordray, Attorney General, and Douglas R. Unver, Assistant Attorney General, for appellee Industrial Commission of Ohio.

_____