[Cite as *State v. Rawnsley*, 2011-Ohio-5696.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24594 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 10-CR-2359 |
| v. | : | |
| | : | |
| ANN K. RAWNSLEY | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 4th day of November, 2011.

. . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorneys for Plaintiff-Appellant

JAY A. ADAMS. Atty. Reg. #0072135, 424 Patterson Road, Dayton, Ohio 45419
        Attorney for Defendant-Appellee

. . . . . . . . .

FAIN, J.

{¶ 1} The State of Ohio appeals from an order of the trial court suppressing evidence of a blood-alcohol test in the prosecution of

defendant-appellee Ann K. Rawnsley for Aggravated Vehicular Assault, in violation of R.C. 2903.08(A)(1), and one count of Operating a Vehicle while Under the Influence, "in violation of [R.C.] 4511.19(A)(1)(a)/4511.19(G)(1)(a)." The State contends that Rawnsley consented to the withdrawal of her blood for the test, or, in the alternative, that the police officer ordering the test had both probable cause for the search and exigent circumstances justifying a warrantless search.

{¶ 2} We conclude that Rawnsley's consent to the blood draw was not knowing and intelligent, in view of the fact that she was incorrectly advised that she was under arrest and that if she did not consent, she would be subject to the immediate suspension of her driver's license. We also conclude that the trial court's finding that the State failed to prove exigent circumstances justifying a warrantless blood draw is not against the manifest weight of the evidence. Consequently, the order of the trial court suppressing the evidence is Affirmed.

I

{¶ 3} The trial court made the following findings of fact.

{¶ 4} "Defendant Ann Rawnsley was involved in a two vehicle collision on April 24, 2010 at approximately 10:55 p.m. in Huber Heights, Ohio on Brandt Pike near the entrance to the Wayne Estates apartment complex. Huber Heights Patrol Officer Joshau Fosnight was dispatched to

the accident scene.  Officer Fosnight arrived at the scene at 10:56 p.m. with his travel time after being dispatched being less than one minute. Officer Fosnight, upon arrival, observed the two involved vehicles. Another Huber Heights officer was focused upon one of the involved vehicles prompting Officer Fosnight's decision to focus his attention on the second vehicle.  Officer Fosnight, as he approached the vehicle, was stopped by an individual who indicated he had spoken to the female occupant of the vehicle (with the occupant being Ann Rawnsley) and informed her that the 'police were on the way.'  The individual informed Officer Fosnight that Ms. Rawnsley responded by saying 'I'm f*cked.  I have been drinking.'

{¶ 5}  "Officer Fosnight, as he peered into the vehicle, observed Ms. Rawnsley on the vehicle's front floorboard with her head resting on the front driver's seat.  Officer Fosnight, though with some difficulty, was able to open the driver's side front door, and, upon doing so, he, in addition to the odor created by the airbag deployment, discerned a strong odor of alcohol.  Ms. Rawnsley informed Officer Fosnight that she did not recall the details of the collision, that she had been at Cricket's bar, but that she did not remember how much alcohol she had consumed.  Officer Fosnight, due to the severity of the collision creating the distinct possibility that Ms. Rawnsley had suffered serious physical injury and the very quick arrival of medical personnel, did not attempt to have Ms. Rawnsley

perform the usual battery of field sobriety tests.

{¶ 6} "The medical personnel, upon arrival, took charge of Ms. Rawnsley. Officer Fosnight, while Ms. Rawnsley was being medically assessed, assisted other Huber Heights officers in processing the accident scene. Officer Fosnight stated, very candidly, that at no time did he consider contacting a judge, either personally or through another officer, in order to present the judge with a probable cause affidavit in an attempt to secure a search warrant authorizing the withdrawal of Ms. Rawnsley's blood so that a blood alcohol test could be performed.

{¶ 7} "When the paramedics began the ambulance transfer of Ann Rawnsley to Miami Valley Hospital (MVH), Officer Fosnight followed the ambulance to the hospital. Officer Fosnight's purpose in going to MVH was to secure a blood draw from Ms. Rawnsley. Ms. Rawnsley, upon arrival at MVH, was initially assessed by the medical staff. Officer Fosnight, upon completion of the initial medical assessment, entered, along with a MVH officer, Ms. Rawnsley's room. Officer Fosnight, upon entering the room and as reflected by his testimony at the February 25 hearing, read, in a verbatim fashion, the BMV 2255 form mandated to be read to an individual arrested for an OVI offense before the arrested individual is requested to submit to a blood alcohol test. [Footnote omitted.]

{¶ 8} "The 'Consequences of Test and Refusal' language informed

Ms. Rawnsley that she was under arrest for an OVI violation and further informed her of the consequences if she refused to take a blood alcohol test. The reality, however, is that when Ms. Rawnsley was read the BMV 2255 language she was not under arrest. Officer Fosnight, again very forthrightly, was adamant on this issue at both the February 3 and February 25 hearings. It seems that a primary reason Ms. Rawnsley was not arrested is the Huber Heights Police Department's practice of not arresting an individual who is being admitted to the hospital. This practice is driven, it seems, by the possibility that Huber Heights will incur some type of financial responsibility for an arrestee's medical care.

{¶ 9} "Ms. Rawnsley, upon being read the BMV 2255 language, agreed to a blood draw. Michelle Kelly, a MVH phlebotomist, drew the blood from Ms. Rawnsley using an OVI kit maintained at MVH. The blood draw was accomplished at 12:56 a.m., two hours after the collision. Officer Fosnight took the OVI kit to the Huber Heights Police Department and placed the kit into a refrigerator maintained by the Huber Heights Police Department exclusively for the storage of OVI kits. Thereafter, he OVI kit was transported to the Miami Valley Regional Crime Lab, where, ultimately, an alcohol test was completed by Forensic Toxicologist Elizabeth Kiely."

{¶ 10} There is evidence in the record to support these findings.

{¶ 11} Rawnsley was charged by indictment with Aggravated

Vehicular Assault and with Operating a Vehicle while Under the Influence. She moved to suppress the blood test evidence. A hearing on the motion was initially conducted on February 3, 2011. The hearing was re-opened, and resumed on February 25, 2011. Following the hearing, the trial court suppressed the blood test evidence, concluding that it was obtained as the result of an unlawful search and seizure.

{¶ 12} From the order suppressing evidence, the State appeals.

II

{¶ 13} The State's sole assignment of error is as follows:

{¶ 14} "THE TRIAL COURT ERRED WHEN IT SUSTAINED RAWNSLEY'S MOTION TO SUPPRESS BECAUSE A WARRANTLESS BLOOD DRAW WAS NOT A VIOLATION OF RAWNSLEY'S FOURTH AMENDMENT RIGHTS UNDER THE CIRCUMSTANCES OF THIS CASE."

A. The Consent Issue

{¶ 15} The drawing of blood from a suspect is not a trivial invasion of that person's privacy. Unlike other searches, it involves the actual invasion of the person's body. And, there are many personal characteristics that can potentially be discovered by an analysis of the person's blood. Without consent, a blood draw requires probable cause and either a warrant, or exigent circumstances justifying a search without a warrant.

{¶ 16} But one who obtains an Ohio driver's license and avails himself

or herself of the privilege thereby conferred of operating a motor vehicle on the roads of this state has impliedly consented to a reasonably reliable chemical test for intoxication. This implied consent is codified in R.C. 4511.191, which has been held not to violate the limitations against unreasonable searches and seizures set forth in either the Ohio or United States constitutions. *State v. Hoover*, 123 Ohio St.3d 41, 2009-Ohio-4993, ¶ 17-18, citing *State v. Starnes* (1970), 21 Ohio St.2d 38. "Asking a driver to comply with conduct he has no right to refuse and thereafter enhancing a later sentence upon conviction does not violate the constitution." *State v. Hoover*, ¶ 22, (citations omitted). Thus, upon arrest, an improper or incomplete recitation of BMV Form 2255, or otherwise improper or incomplete advice given to a defendant concerning his or her rights under the implied consent statute, is not of constitutional significance, and would not support the application of the exclusionary rule to suppress the evidence obtained.

{¶ 17} But the implied consent statute does not, by its terms, apply to the case before us. It specifies that: "Any person who operates a vehicle * * * within this state * * * shall be deemed to have given consent to a chemical test or tests of the person's whole blood, * * * breath, or urine to determine the alcohol * * * content * * * *if arrested* for a violation of division (A) or (B) of R.C. 4511.19." R.C. 4511.191 (emphasis added). If Rawnsley had been arrested, it would not be

necessary to engage in a Fourth Amendment consent-to-search analysis – she would have been deemed to have consented, and would have had no constitutional right to refuse. But the evidence offered by the State, in the form of Officer Fosnight's own testimony, established that she was not arrested. Therefore the implied consent statute does not apply, and Rawnsley cannot have been deemed to have impliedly consented to the withdrawal of her blood.

{¶ 18} The State contends that no warrant was required for the blood draw because Rawnsley affirmatively consented to it, independently of any implied consent under the implied consent statute. We agree with Rawnsley and the trial court that her consent did not constitute a knowing and intelligent waiver of her Fourth Amendment right to not be subjected to a warrantless search, because she was told by Officer Fosnight that her refusal to submit to the test would subject her to the immediate suspension of her license, when this was not true.

{¶ 19} The provision for an immediate suspension of a driver's license upon refusal to submit to a chemical test is contained in R.C. 4511.191(B)(1). This provision, like the implied consent, itself, is expressly predicated upon the fact that the person who is subject to the suspension has been arrested for Operating a Vehicle while Under the Influence. There is no provision for an automatic suspension-upon-refusal for a person, like Rawnsley, who has not been

arrested for OVI.

{¶ 20} Thus, when Officer Fosnight told Rawnsley that she would be subject to an immediate, automatic driver's license suspension if she did not consent to the blood draw, that was not true. Because Rawnsley was misadvised by the police officer that there would be a serious adverse consequence if she decided not to waive her Fourth Amendment right (not to be subjected to a warrantless search) and consent to the blood draw, her consent and concomitant waiver was not knowing and intelligent. See *State v. Rice* (1998), 129 Ohio App.3d 91.

B.   The Exigent Circumstances Issue

{¶ 21} The trial court found, and we agree, that Officer Fosnight had probable cause to believe that Rawnsley was under the influence of alcohol when the collision occurred. But the trial court held that the State had failed to prove the existence of exigent circumstances justifying a blood draw without a warrant.

{¶ 22} In *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the Supreme Court of the United States held that the taking of a blood specimen for the purpose of testing it for blood alcohol concentration is permitted without a warrant if there is probable cause and if there are exigent circumstances. The Court held that because the concentration of alcohol in the blood dissipates over time, the police officer in that case had exigent circumstances justifying the taking

of a blood sample without a warrant. But there is no further development of the facts surrounding exigency in the *Schmerber* opinion; there is no indication in the opinion of the amount of time that intervened in that case from the alleged offense to the taking of the blood specimen, and there is no indication of the extent to which blood alcohol dissipates over time.

{¶ 23} The general problem of stale evidence in connection with blood alcohol concentrations, addressed in *Schmerber v. California*, has been codified in the Ohio Revised Code. For a test result to be admissible, the blood draw must take place within three hours of the alleged violation. R.C. 4511.19(D)(1)(b).

{¶ 24} With regard to exigent circumstances, the trial court concluded:

{¶ 25} "Officer Fosnight, as he forthrightly admitted, did not consider making any effort to obtain a warrant. It seems to this court that the Huber Heights Police, in order to establish an exigent circumstance, had the obligation, particularly since the collision occurred not in the early morning hours but at approximately 10:55 p.m., to draft a probable cause affidavit and attempt to reach a judge, or to at least explain why this was not practical. If, after a good faith effort, such an attempt was unavailing, this court, without hesitation, would conclude that exigent circumstances existed. However, without such an attempt, or any explanation concerning why such an attempt was not practical, this court

cannot conclude that exigent circumstances existed.   FN 4.

{¶ 26} "FN 4.   The case of *State v. Hollowell* [, Montgomery App. No. 24010,] 2011-Ohio-1130 provides an example where the Montgomery County Sheriff's Department, using two deputies, were able to obtain a warrant to obtain a blood draw within the three hour period prescribed by O.R.C. 4511.19(D)(1)(b)."

{¶ 27} Essentially, the trial court found that the State had failed in its burden to prove the existence of exigent circumstances justifying a warrantless search.   The evidence in the record supports the trial court's finding that Officer Fosnight responded to the scene within one minute of the collision.   He was promptly made aware of circumstances establishing probable cause to believe that Rawnsley, the sole occupant of the front portion of one of the vehicles involved in the collision, was under the influence.   Given these facts, we cannot say that the trial court's finding that the State failed in its burden of proving the existence of exigent circumstances is against the manifest weight of the evidence.

{¶ 28} The State's sole assignment of error is overruled.

III

{¶ 29} The State's sole assignment of error having been overruled, the order of the trial court suppressing evidence, from which this appeal is taken, is Affirmed.

. . . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Johnna M. Shia
Jay A. Adams
Hon. Connie S. Price