[Cite as *State v. Roar*, 2014-Ohio-5214.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 13CA842 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| KYLE A. ROAR, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 11/18/14** |

_____

APPEARANCES:

James T. Boulger, Chillicothe, Ohio, for Appellant.

Robert Junk, Pike County Prosecuting Attorney, Waverly, Ohio, for
Appellee.

_____

McFarland, J.

{¶1} Kyle A. Roar appeals his convictions in the Court of Common

Pleas, Pike County, Ohio, in violation of R.C. 2903.06 (A)(1)(a), aggravated

vehicular homicide, a felony of the second degree, and two violations of

R.C. 2903.08(A)(1)(a), aggravated vehicular assault, felonies of the third

degree. Roar raises four assignments of error, which are interrelated to the

taking of his blood subsequent to a fatal car crash and the denial of his

motion to suppress the blood test results. After reviewing the record, we

overrule Appellant's assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} After midnight on September 8, 2012, Kyle Roar, Appellant, was operating a motor vehicle near the intersection of Route 23 and Route 32 in Pike County. Appellant had three passengers in his vehicle. Alicia Vanhoose was a front seat passenger, and both Anthony Wooldridge and Jessica Smallwood were riding in the back seat. When Appellant attempted to make a left turn onto Route 32 and failed to yield to an oncoming pickup truck, he collided with the pickup truck. The impact took place on the passenger side of Appellant's vehicle and resulted in the death of Alicia Vanhoose. Appellant and the others were also injured and were transported to the Pike Community Hospital.

{¶3} While Appellant was in the hospital emergency room, Trooper Samuel Davis of the Ohio State Highway Patrol made contact with him for approximately 30 minutes. Trooper Davis read Appellant his Miranda rights and took a statement from him. Trooper Davis also obtained a sample of Appellant's blood. Trooper Davis did not arrest Appellant and did not issue him a citation on that date. A report of the laboratory analysis of Appellant's blood later revealed an alcohol level below the specified limits

and a marijuana metabolite level above the limit set forth in R.C. 4511.19(A)(1)(j)(8)(ii).

{¶4} Appellant was indicted on February 12, 2013, of two counts of aggravated vehicular homicide and four counts of aggravated vehicular assault. Appellant pled not guilty to all counts. Appellant subsequently filed a motion to suppress, alleging that the blood specimen obtained while he was a patient at the hospital was taken without a warrant and without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the statutory procedures set forth in R.C. 4511.19, 4511.191 and 4511.192. At the oral motion hearing, Trooper Davis was the only witness. The pertinent details of his testimony will be set forth below, where relevant.

{¶5} At the conclusion of the suppression hearing, the trial court requested written arguments.[1] The parties filed briefs on the issue. On July 19, 2013, the trial court denied Appellant's motion to suppress.

{¶6} On October 7, 2013, Appellant withdrew his plea of not guilty, and entered pleas of no contest to counts one, three, and five of

---

[1] The trial court made reference to the then-recently published decision of the United States Supreme Court in Mis*souri v. McNeely,* 133 S. Ct. 1552, Mo. 2013. The court specifically requested the parties address in their arguments:

"…the issue of the effect of reading the 2255 to a person, advising he was under arrest and the consequences of refusal if he's not in custody, uh, and what that effect, if any, has on the consensual nature of the taking of the blood test."

the indictment.  The parties stipulated the violation of R.C. 4511.19(A) was based upon Appellant's operation of a motor vehicle with a concentration of marijuana metabolite of 76.19 ng/ml in his whole blood, that being a violation of the specific subsection of R.C. 4511.19(A)(1)(j)(8)(ii).  The aggravated vehicular assault charges in counts three and five were also stipulated to be based upon the same R.C. 4511.19(A) violation contained in count one.

{¶7} The trial court accepted Appellant's pleas and sentenced him to a prison term of four years on count one, with two years of that sentence to be served as a mandatory term of imprisonment.  The court also imposed a lifetime driver's license suspension on count one.  As to counts three and five, the trial court imposed terms of imprisonment of thirty-six months to be served concurrent with each other and concurrent to the sentence on count one, for an aggregate prison term of four years.  The judgment entry of sentence contained a dismissal of counts two, four, and six of the indictment.

{¶8} This timely appeal followed.

## ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT'S FINDING THAT THE DEFENDANT VOLUNTARILY CONSENTED TO THE BLOOD DRAW WAS NOT SUPPORTED BY COMPETENT CREDIBLE EVIDENCE AND CONSTITUTED A MISAPPLICATION OF THE CLEAR AND CONVINCING EVIDENCE STANDARD TO SUCH A DETERMINATION.

II.     THE TRIAL COURT'S FINDING THAT THE SEIZING OFFICER HAD PROBABLE CAUSE TO BELIEVE THE DEFENDANT'S BLOOD WOULD CONTAIN EVIDENCE OF A CRIME WAS NOT SUPPORTED BY COMPETENT CREDIBLE EVIDENCE.

III.    THE TRIAL COURT ERRED AS A MATTER OF LAW IN EQUATING PROBABLE CAUSE TO BELIEVE A PERSON'S BLOOD SPECIMEN WOULD CONTAIN ALCOHOL AND/OR DRUGS WITH PROBABLE CAUSE TO BELIEVE THE PERSON WAS UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS.

IV.     THE TRIAL COURT'S FINDING THAT THE STATE HAD PROVEN AN EXIGENT CIRCUMSTANCE EXCEPTION TO THE WARRANT REQUIREMENT FOR THE TAKING OF A SPECIMEN OF THE DEFENDANT'S BLOOD WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.

### A. STANDARD OF REVIEW

{¶9} Appellate review of a decision and judgment on a motion to suppress evidence involves mixed questions of law and fact. *State v. Brooks,* 4th Dist. Athens No. 2014-Ohio-3343, ¶ 9, citing *State v. Grubb,* 186 Ohio App.3d 744, 2010-Ohio-1265, 930 N.E.2d 380, at ¶ 12 (3rd Dist.); *State v. Book,* 165 Ohio App.3d 511, 2006-Ohio-1102, 847 N.E.2d 52, at ¶ 9 (4th Dist.). In hearing such motions, a trial court assumes the role of the trier of

fact and is best situated to resolve factual disputes and to evaluate witness credibility. *Brooks, supra,* citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 100; *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

{¶10} Appellate courts will accept a trial court's factual findings if competent, credible evidence exists to support those findings. *Brooks, supra,* at ¶ 10, citing *State v. Little,* 183 Ohio App.3d 680, 2009-Ohio-4403, 918 N.E.2d 230, at ¶ 15 (2nd Dist.); *State v. Metcalf,* 11 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist. 1996). However, appellate courts review de novo a trial court's application of law to those facts. *Brooks, supra*, citing *State v. Higgins,* 183 Ohio App.3d 465, 2009-Ohio-3979, 917 N.E.2d 363, at ¶ 14 (5th Dist.); *State v. Poole,* 185 Ohio App.3d 38, 2009-Ohio-5634, 923 N.E.2d 167, at ¶ 18 (11th Dist.) In other words, an appellate court affords no deference to a trial court in its application of the law to the facts of the case. *Brooks, supra.*

## B. LEGAL ANALYSIS

{¶11} In this case, Appellant's four assignments of error are interrelated to the denial of his motion to suppress. Appellant's brief properly set forth the assignments of error, pursuant to Appellate Rules 12 and 16. We choose to address them jointly and begin with the second

assignment of error, raised by Appellant, relating to the probable cause

determination made by Trooper Davis and the trial court.

     1.  <u>Did the trooper have probable cause to believe Appellant's blood</u>
<u>would contain evidence of a crime?</u>

**{¶12}** The Fourth Amendment to the United States Constitution

protects individuals against unreasonable governmental searches and

seizures.  See, e. g., *Delaware v. Prouse,* 440 U.S. 648, 662, 99 S.Ct. 1391,

1400 (1979). "[S]earches conducted outside the judicial process, without

prior approval by judge or magistrate, are, per se unreasonable under the

Fourth Amendment-subject only to a few specifically established and well-

delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct.

507 (1967); *State v. Riley,* 4th Dist. No. 00CA044, 2001-Ohio 2487, 2001

WL 688540 (June 12, 2001).

**{¶13}** Probable cause only requires the existence of circumstances

that warrant suspicion. *State v. Smith,* 4th Dist. Highland No. 09CA29,

2010-Ohio-4507, ¶ 84, citing *State v. Young,* 146 Ohio App.3d 245, 254,

765 N.E.2d 938.  Thus, "the standard for probable cause requires only a

showing that a probability of criminal activity exists, not a prima facie

showing of criminal activity." *Smith, supra*.  Furthermore, courts view the

totality of the circumstances in making probable cause determinations. *State*

*v. Russell,* 9th Dist. Summit No. 26819, 2013-Ohio-4895, ¶ 8, citing *Illinois*

*v. Gates,* 462 U.S. 213, 238 (1983). In analyzing whether officers had probable cause to proceed, reviewing courts will look to the totality of the circumstances as they existed at the time of the incident. *State v. Shinholster,* 9th Dist. Summit No. 25328, 2011-Ohio- 2244, at ¶ 8, citing *Gates, supra*, at 233.

{¶14} Based upon our review of the record, we find Trooper Davis had probable cause to believe Appellant's blood would contain evidence of a crime. Trooper Davis testified that he received information through radio contact with two other troopers that there was a "serious injury crash with one fatality." He testified two vehicles were involved and there was believed to be "foul play" because of containers of alcohol found in one vehicle. Trooper Davis testified he previously worked with the informing troopers and they had provided him reliable information in the past. Trooper Davis explained the highway patrol's policy of obtaining either "blood or some other sort of specimen" from each driver involved in a fatal car accident or an accident causing serious physical injury. Trooper Davis acknowledged he was dispatched to the hospital for the express purpose of making contact with Appellant, taking his statement, and collecting a blood sample.

{¶15} Trooper Davis further testified when he arrived at Pike Community Hospital, he first checked the medical status of all involved in the crash. Appellant's passengers were unconscious, so the trooper made contact only with Appellant. Appellant was in the emergency room, strapped to a backboard in a supine position, and his head was immobilized. He was awaiting treatment, conscious, and responsive to questioning. Trooper Davis did not know the nature of Appellant's injuries, nor did he know if Appellant had experienced head trauma or loss of consciousness.

{¶16} Trooper Davis first gave him the Miranda warnings and clarified with Appellant that he understood them. There was no evidence of abnormal speech or difficulty with comprehension. Appellant gave a statement to the trooper, which the trooper transcribed. Appellant denied consumption of alcohol or drugs of abuse.

{¶17} Trooper Davis described Appellant's demeanor as "very lethargic," and he did not show much emotion. The trooper did not observe any visible injuries. The trooper noted no odor of alcohol on Appellant's person.

{¶18} Trooper Davis also testified he had training through the Ohio State Highway Patrol Academy on detection of impaired drivers, as well as advanced roadside drug detection for impaired drivers. He was trained at the

Academy regarding the horizontal gaze nystagmus (HGN) test, certified to perform the test, and had taken refresher courses.  He acknowledged being instructed that head trauma can affect the results of an HGN test.  Trooper Davis observed Appellant's glassy eyes.  Although he did not detect the odor of an alcoholic beverage or the extent of Appellant's injuries, Trooper Davis performed the test on Appellant by leaning over top of him as Appellant reclined on the backboard.  He observed six clues which indicated alcohol consumption and other impairment factors.

{¶19} Trooper Davis also testified he had never been trained to give the HGN test to a person in a reclining position.  On cross-examination, he acknowledged he never went to the scene of the accident or saw the vehicles involved in the accident.  He was unaware as to whether or not Appellant had suffered a loss of consciousness, a concussion, or the extent of any head trauma.  He was advised by medical staff, however, that Appellant had not been medicated by them.  Trooper Davis did not recall Appellant being hooked up to any lines or IV needles.

{¶20} Trooper Davis also read the "Consequences of Test and Refusal" portion contained on the BMV 2255 form.  Following the reading of the form, Trooper Davis asked Appellant if he would consent to a blood draw.  Appellant consented.

{¶21} Based upon the testimony, we conclude there was probable cause for Trooper Davis to believe Appellant's blood would contain evidence of a crime. Under a "totality of the circumstances analysis," Trooper Davis had reliable information from other officers at the accident scene that a fatal two-car collision had occurred and containers of alcohol were found in one of the cars. When Trooper Davis arrived at the hospital, he spent approximately 30 minutes in contact with Appellant, during that time, observing Appellant was "very lethargic" and his eyes were "glassy." Trooper Davis conducted the HGN test and detected six clues of impairment. Despite the trooper's testimony that he did not detect the odor of an alcoholic beverage upon Appellant, and despite Appellant's denial of alcohol use, the trooper opined that Appellant was impaired as a result of the use of alcohol and/or drugs. The existing circumstances known to Trooper Davis at the time he contacted Appellant warranted suspicion that Appellant's blood would contain evidence of a crime, operating a motor vehicle under the influence of alcohol and/or drugs. Applying the law to the facts, we find Trooper Davis had probable cause to believe Appellant's blood would contain evidence of a crime. As such, we overrule Appellant's second assignment of error.

2. Did the State prove an exigent circumstance exception to the warrant requirement for the taking of Appellant's blood?

3. Did the trial court equate probable cause to believe a person's blood specimen would contain alcohol and/or drugs with probable cause to believe the person was under the influence of alcohol and/or drugs?

{¶22} Appellant argues there was no evidence of exigent circumstances to support the trial court's finding that said circumstances justified the drawing of his blood without a warrant. The determination of whether exigent circumstances exist requires examination of the factual circumstances of each particular case. *State v. Berg,* 9th Dist. Summit No. 26953, 2014-Ohio-2745, ¶ 12, citing *Missouri v. McNeely,* 133 S.Ct. 1552, 1559 (Mo. 2013). Appellant also argues Trooper Davis's observation of him provides, at best, a marginal basis with respect to reasonable suspicion to conduct field sobriety testing, but does not supply probable cause to believe he was under the influence of alcohol and/or drugs.[2]

{¶23} In *Schmerber v. California,* 364 U.S. 757, 86 S.Ct. 1826. (1966), the petitioner challenged his conviction for driving while intoxicated upon the basis that the warrantless seizure of his blood, over his objection, violated his Fourth Amendment rights. Although rejecting his claim, the Supreme Court held that a warrantless search that intruded into the human body was not justifiable as a search incident to a lawful arrest. But the

_____

[2] Appellant acknowledges the issue of reasonable suspicion to conduct field sobriety testing was not raised in his motion to suppress because the administration of an HGN test was not discovered until the day of the suppression hearing, when the BMV 2255 form was produced subsequent to a defense subpoena duces tecum.

warrantless seizure could be justified, the Court held, based upon the "evanescent nature" of the evidence - the fact that the level of alcohol in blood decreased with the passage of time. *Id.,* at 779.  Because of the fleeting nature of the evidence, the time necessary to obtain a warrant, and the prior establishment of probable cause to justify an arrest, the Court upheld the warrantless seizure of the petitioner's blood as reasonable under the Fourth Amendment.  Although there was an arrest in *Schmerber,* the Court did not make its holding dependent upon the fact that the defendant had been arrested, *only that there was probable cause for the DUI arrest.* (Emphasis added.) See, *State v. King*, 1st Dist. Hamilton No.C-010778, 2003-Ohio-1541, at ¶ 26.  "[T]here now appears to be universal agreement among the courts that have addressed the question that an arrest is not integral to the *Schmerber* holding and, consequently, that a warrantless extraction of blood from a driver lawfully suspected of DUI, does not violate the [F]ourth [A]mendment even in the absence of an arrest or actual consent." *King, supra*, at ¶ 26, quoting *State v. Entrekin,* 98 Hawaii 221, 230, 47 P.3d.336 (2002); see, also, *State v. Murray,* 271 Kan.223, 228-232, 21 P.3d 528 (2001).

{¶24} In *King,* the defendant was convicted of aggravated vehicular homicide and vehicular homicide following a jury trial.  King was involved

in an accident around 3:00a.m. on the Columbia Parkway when he lost control of his vehicle, crossed the center line, and crashed into another vehicle. One of the Cincinnati police officers arriving at the scene could smell the odor of alcohol on King and informed another officer. King was transported by ambulance. The second officer was dispatched to the hospital to obtain a sample of King's blood. The officer testified King was wearing a neck brace with tubes extruding from his mouth or nose, but King was able to write down his telephone number. The officer's impression was that King, despite his physical condition, was alert and his mental faculties were intact. A nurse also testified although King had received narcotic pain medication she still considered him fully oriented to time and place. The officer admitted his purpose was not to place King under arrest. The officer first read to King his Miranda rights and then recited the language from the ALS form (BMV 2255). The officer testified he read to King the sentence "You are now under arrest for operating a vehicle under the influence of alcohol, a drug of abuse, or both alcohol and a drug of abuse." After reading additional language from the form, the officer asked King if he would consent to a blood sample being drawn. King responded unintelligibly but then the nurse interceded and, according to the testimony of the officer and the nurse, King responded by clearly articulating approval. King did not

sign the form because his arms were strapped to a gurney. The blood sample was later shown to be at the minimum prohibited level.

{¶25} In *King,* the court held, regardless of the issues involving consent and application of the Ohio implied-consent law, the seizure of King's blood by the police was justified under *Schmerber* given the evanescent nature of the evidence and given that the police had probable cause to arrest King for driving under the influence. The *King* court's fact-specific holding stated: "We hold that probable cause exists to arrest for driving while under the influence when in the early morning hours a vehicle clearly goes out of control, there is an accident, and the driver has the odor of alcoholic beverages on his breath."

{¶26} In *State v. Carr,* 11th Dist. Lake No. 2012-L-001, 2013-Ohio-737, the defendant appealed from decisions denying his motion to suppress and finding him guilty of various traffic-related infractions including aggravated vehicular assault and vehicular assault. Carr argued the evidence taken from a blood draw should have been suppressed because he was not under arrest at the time of the blood draw, did not consent to it, and certain Ohio Administrative Code procedures were not followed in the drawing and testing of his blood. The State argued that Carr was under arrest at the time of the blood draw and even if he was not, a blood draw was proper under

*Schmerber* because there was probable cause to arrest Carr and exigent

circumstances required the taking of the blood sample in the absence of

consent.  The appellate court held:

> "Pursuant to *Schmerber,* if there are exigent circumstances and 'an officer has probable cause to arrest a driver for DUI, the result of an analysis of a blood sample taken over the driver's objection and without consent is admissible in evidence, even if no warrant had been obtained.' *Id.,* at ¶ 42, quoting *State v. Hoover,* 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 19, citing *Schmerber, supra,* at 770-771." (Internal citations omitted.).

{¶27} The *Carr* court found that exigent circumstances existed, but

went on to consider whether the trial court properly found that probable

cause existed to arrest Carr for an OVI, such that a blood draw was proper

under *Schmerber.* The *Carr* court noted:

> "Probable cause is defined as 'a reasonable ground for belief of guilt.' (Internal citations omitted.).  Probable cause requires 'more than bare suspicion:  Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are]sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed.' *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S.Ct. 1302 (1949), quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280 (1925).  A probable cause determination is based on the 'totality' of facts and circumstances within a police officer's knowledge. *State v. Miller*, 1217 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist. 1997).  The odor of alcohol, glassy eyes, slurred speech, and other indicia of alcohol use by a driver are factors to be considered in determining the existence of probable cause for an OVI arrest. *Kirtland Hills v. Deir,* 11th Dist. No. 2004-L-

005, 2005-Ohio-1563, ¶ 16.  Testimony regarding a defendant's erratic driving is also a factor to be considered. *State v. Sitko,* 11th Dist. No. 2011-P-0042, 2012-Ohio-2705, ¶ 28."

**{¶28}** A police officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense. *State v. Hollis,* 5th Dist. Richland No. 12CA34, 2013-Ohio-2586, ¶ 28; *State v. Cummings,* 5th Dist. No.2005-CA-00295, 2006-Ohio-2431, ¶ 15, citing *State v. Heston, 29* Ohio St.2d 152, 280 N.E.2d 376 (1972).  When evaluating probable cause to arrest for OVI, the totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered.  *Hollis, supra*; See *State v. Homan,* 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000).  Furthermore, a police officer does not have to observe poor driving performance in order to effect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. *Hollis, supra*; See, *State v. Harrop,* 5th Dist. No. CT2000-0026 (July 2, 2001), citing *Atwell v. State,* 35 Ohio App.2d 221, 301 N.E.2d 709 (8th Dist. 1973). In *Hollis,* the appellate court went on to find the tragic facts and circumstances of the case "replete" with probable cause for constructive arrest for OVI.  The *Hollis* court wrote:

"The circumstances of the crash, which include appellant losing control and overturning the vehicle at a high rate of speed, combined with the alcoholic beverage containers scattered throughout the scene, plus the odor of an alcoholic beverage emanating from appellant's person in the MedCentral E.R., constitute probable cause."

**{¶29}** In the case sub judice, the trial court wrote:

"The facts of the present action include a severe collision of two vehicles at approximately 1:36 AM on a Sunday morning, resulting in the death of one of the occupants in the Defendant's vehicle and in the emergency medical treatment of the Defendant and two other occupants of the Defendant's vehicle at the hospital.  After arriving at the hospital and observing, interviewing and performing the HGN test on the Defendant, with the additional information that Tpr. Davis had obtained via the radio from the officers investigation at the scene of the collision, Tpr. Davis had probable cause to believe that a blood specimen from the Defendant would contain evidence of alcohol and/or drug impairment.  The collision had occurred nearly an hour and a half earlier, however, and for Tpr. Davis to prepare an application and affidavit for a search warrant, in all likelihood having to contact a prosecuting attorney to help him do so, and then to draft a proposed search warrant for the judge's signature, and then to locate a judge to issue the search warrant, all after 3:05 AM, when none of the officials involved are in their offices, would undoubtedly take a reasonably long period of time, even if these things could be accomplished at all in those early morning hours, during which time the evidence would be dissipating through elimination from the Defendant's body.  Further, there also existed the possibility that during any delay necessitated in order to obtain a search warrant, the defendant would be given medications at the hospital that would contaminate the results of the blood draw, or that the defendant might be released from the hospital and absent himself which the officer was contacting a prosecutor and/or attempting to prepare the application and supporting affidavit and thereafter contacting a judge to sign the search warrant.

* * *

> In the Court's opinion, the exigent circumstances that presented themselves on the morning of September 9, 2012, justified the taking of the blood specimen without obtaining a search warrant. *Missouri v. McNelly,* supra."

{¶30} We agree with the trial court here that the drawing of Appellant's blood was justified due to the evanescent nature of the evidence and because Trooper Davis had probable cause to arrest Appellant for operating a motor vehicle under the influence of alcohol and/or drugs. Here the trial court noted that the severe collision occurred in the early morning hours, and resulted in a fatality. Although Trooper Davis did not observe the accident or see the vehicles involved, he had reasonably reliable information regarding the nature of the accident. Trooper Davis also had reasonably reliable information that one of the vehicles involved in the accident had containers of alcohol inside it. The trooper observed and interviewed Appellant, noted glassy eyes, and performed an HGN test. Based on the above, we find that Trooper Davis had probable cause to arrest Appellant for operating a vehicle under the influence of alcohol and/or drugs. As such, we overrule Appellant's third assignment of error.

{¶31} We also agree that based on the time of the collision, at approximately 1:36 a.m., and that when Trooper Davis made his probable cause determination, nearly an hour and a half later, the logistics of

preparing an application for a search warrant, possibly having to contact a prosecutor to assist, drafting it, and then locating and obtaining a judge's signature, would undoubtedly take a reasonably long period of time. We agree with the trial court that during this long period of time, the evidence would be dissipating from Appellant's body. As such, we find the trial court did not err in finding that the exigent circumstances justified the taking of Appellant's blood without a search warrant. We overrule this assignment of error and affirm the judgment of the trial court.

4. Was Appellant's consent voluntary?

{¶32} The drawing of blood from a suspect is not a trivial invasion of that person's privacy. *State v. Rawnsley,* 2nd Dist. Montgomery No. 24594, 2011-Ohio-5696, ¶ 15. Unlike other searches, it involves the actual invasion of the person's body. *Id.* Appellant contends that the trial court erroneously found clear and convincing evidence that his consent was voluntary, as Appellant purportedly gave consent while he was strapped to a backboard at the hospital, awaiting treatment for trauma. Appellant argues there is virtual unanimity among Ohio appellate courts that, absent a valid arrest, a recitation of implied consent warnings (by way of reading the BMV 2255 form which indicates a civil sanction) is inherently coercive and precludes a finding that subsequent consent to the taking of a specimen of bodily fluid is

voluntary.[3]  Appellant concludes, based upon the reading of the BMV 2255 to him, along with his physical state at the time of the interaction with Trooper Davis, express coercion was directly tied to the refusal to consent.

{¶33} In *Rawnsley,* the defendant was involved in a two-vehicle crash and transported to the Miami Valley Hospital.  A trooper followed the ambulance to the hospital in order to secure a blood draw.  The trooper, upon entering defendant's room, read to her in verbatim fashion, the BMV 2255 form mandated to be read to an individual arrested for an OVI offense before the individual is requested to submit to a blood alcohol test.  The defendant, upon being read the form, agreed to the blood draw.  Later, the trooper candidly stated at the suppression hearing that he at no time considered contacting a judge in order to present a probable cause affidavit in an attempt to secure a search warrant authorizing the taking of the blood test.  The appellate court noted also, in reality, when defendant was read the BMV 2255 form language, she was not under arrest.

{¶34} Rawnsley was later charged by indictment with aggravated vehicular assault while under the influence.  She filed a motion to suppress which the trial court granted.  On appeal, the court went to great lengths

---

[3] See *State v. Whitt*, 5th Dist. Licking No. 10-CA-3, 2010-Ohio-3761; *State v. Kirchner*, 5th Dist. Stark No. 2001 CA 00107, 2001-Ohio-1915; *State v. Rice,* 129 Ohio App.3d 9, 717 N.E.2d 351 (7th Dist. 1998); *State v. Bachmayer*, 6th Dist. Lucas Nos. L-02-1034, L-02-1017, 2002-Ohio-5904; *State v. Rawnsley*, 2nd Dist. Montgomery No. 24594, 2011-Ohio-5696; *State v. Vickers*, 1983 WL 4241 (9th Dist. 1983); *State v. Gottfrield,* 86 Ohio App.3d 106, 619 N.E.2d 1185 (6th Dist.1993); and *State v. Szalai,* 113 Ohio Misc.2d 6, (Ashtabula CP. 1983) (superseded by statute as stated in *Gottfried, supra,* at ¶ 5.)

discussing the implied consent codified in R .C. 4511.191, which has been

held not to violate the limitations against unreasonable searches and seizures

set forth in the Ohio and United States constitutions. *Rawnsley, supra,* at

¶ 16, citing *State v. Hoover,* 123 Ohio St.3d 41, 2009-Ohio-4993, ¶ 17-18.[4]

The court reiterated that, upon arrest, an improper or incomplete recitation of

BMV Form 2255, or otherwise improper or incomplete advice given to a

defendant concerning his or her rights under the implied consent statute, is

of no constitutional significance, and would not support the application of

the exclusionary rule to suppress the evidence obtained. *Id.* at ¶ 16.

However, the second district court noted the implied consent statute did not,

by its terms, apply to the case in *Rawnsley.*

> "Had Rawnsley been arrested, it would not be necessary to
> engage in a Fourth Amendment consent-to-search analysis-she
> would have been deemed to have consented, and would have
> had no constitutional right to refuse.  But the evidence offered
> by the State, in the form of [the trooper's] own testimony,
> established that she was not arrested.  Therefore, the implied
> consent statute does not apply, and Rawnsley cannot have been
> deemed to have impliedly consented to the withdrawal of her
> blood."

{¶35} The State argued no warrant was required for the blood draw

---

[4] The implied consent statute specifies that: "Any person who operates a vehicle * * * within this state
 * * *shall be deemed to have given consent to a chemical test or tests of the person's whole blood
* * *breath, or urine to determine the alcohol * * * content * * * *if arrested* for a violation of division (A)
or (B) of R.C. 4511.19." R.C. 4511.191 (emphasis added).  This statute has been amended by the 130th
General Assembly, effective 9/15/14.  The pertinent language here is the same as the version in effect at the
time of the *Rawnsley* decision.

because Rawnsley affirmatively consented to it, independent of any implied consent statute. However, the appellate court agreed that her consent did not constitute a knowing and intelligent waiver of her Fourth Amendment right not to be subjected to a warrantless search, because she was told by the trooper that her refusal to submit to the test would subject her to the immediate suspension of her license, when this was not true. "Because Rawnsley was misadvised by the police officer that there would be a serious adverse consequence if she decided not to waive her Fourth Amendment right (not to be subjected to a warrantless search) and consent to the blood draw, her consent and concomitant waiver was not knowing and intelligent." *Rawnsley, supra,* at ¶ 20. Compare, S*tate v. Taggart*, 4th Dist. Washington No. 86CA21, 1987 WL 15982 (citing *Schmerber* to support the proposition that probable cause to arrest negated consent to test. However, in *Taggart* we noted *Schmerber* is limited to situations where a search is an "appropriate incident to petitioner's arrest.")

{¶36} In *King, supra,* the appellate court also considered that the defendant was told, pursuant to the language read to him from the ALS form, that he was under arrest and that he had to submit to the test or violate the law. The form was read to him at a time when King was lying on a gurney, wearing a neck brace, with tubes extruding from his mouth or nose.

He had also received narcotic pain medication.  The *King* court wrote "Under such circumstances, it is difficult to imagine that the consent he gave was voluntary."

{¶37} Here, Appellant purportedly gave consent under circumstances which indicate he was strapped to a backboard, his head immobilized, and subsequent to a traumatic vehicular crash experience.  He was also advised he was under arrest when, in fact, Trooper Davis had no intention of arresting Appellant.  The issue of the voluntariness of Appellant's consent given under these circumstances is moot, however, based on our having found that there was probable cause to arrest Appellant and that exigent circumstances existed which justified the taking of his blood sample.  As such, we decline to address this assignment of error and it is hereby overruled.

## CONCLUSION

{¶38} Based upon the above, we find the trial court did not err by overruling Appellant's motion to suppress.  We find there was probable cause and exigent circumstances present in this case which justified the taking of Appellant's blood without a warrant.  As such, we have overruled the assignments of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.:   Concurs in Judgment and Opinion.
Hoover, J.:   Concurs in Judgment Only.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**